AMY, RECURRENTE, v. EL REGISTRADOR DE LA PROPIEDAD,
RECURRIDO.

RECURSO gubernativo contra nota del Registrador de la Propiedad de Guayama denegando la inscripción de una escritura de compraventa e hipoteca voluntaria.

No. 182.—Resuelto en julio 9, 1914.

RECURSOS GUBERNATIVOS—ALEGATO DEL REGISTRADOR.—En estos casos los registradores deben informar con cierta amplitud sobre los motivos de sus notas y citar las autoridades que les servieron de base, para mayor seguridad de acierto en la resolución que dicte el tribunal.

COMPRAVENTA E HIPOTECA VOLUNTARIA.—Presentado para su inscripción en el registro de la propiedad un contrato titulado de compraventa e hipoteca voluntaria, por virtud del cual la dueña de una finca la vendió a otra persona por un determinado precio, parte del que confesó la vendedora haberlo recibido de la compradora, aplazándose la otra parte para ser pagada por la compradora a determinadas personas dentro de quince días después del fallecimiento de la vendedora, habiéndose constituído además por la compradora hipoteca sobre la finca adquirida para garantir el plazo del precio aplazado, se resolvió: que dicho contrato era inscribible.

OBLIGACIONES A PLAZO—OBLIGACIONES CONDICIONALES.—Entre el plazo y la condición de las obligaciones existen analogías y diferencias que es necesario distinguir para no confundir una obligación a plazo con una condicional. La condición es un acontecimiento incierto, mientras que el plazo es un suceso que necesariamente ha de llegar, aunque se ignore cuándo. La condición puede hacer que surta o nó efecto la relación obligatoria, mientras que el plazo sólo impone una limitación en el tiempo a la producción de los efectos de la relación contractual y a la eficacia de ésta.

ID.—DÍA CIERTO PARA SU CUMPLIMIENTO.—Cuando, como en el caso de autos, se estipula en un contrato de compraventa e hipoteca voluntaria, que el precio aplazado deberá ser pagado a determinadas personas quince días después del fallecimiento de la vendedora, la fijación de esa fecha debe entenderse como un día cierto en el cual será exigible la obligación, de acuerdo con los preceptos del artículo 1092 del Código Civil Revisado.

HIPOTECAS—CONSTITUCIÓN DE LAS MISMAS POR EL COMPRADOR PARA GARANTIZAR EL PRECIO APLAZADO.—De acuerdo con la ley, la jurisprudencia y la costumbre, el comprador de una finca puede constituir hipoteca sobre ella, en el acto mismo de la compra, para garantir el precio aplazado de la venta.

Los hechos están expresados en la opinión.

Abogado de la recurrente: *Sr. Manuel A. Rivera.*

El Registrador Sr. Felipe Cuchí compareció por escrito en nombre propio.

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tribunal.

Presentada para su inscripción en el Registro de la Propiedad de Guayama la escritura número 100, de compraventa e hipoteca voluntaria, otorgada por Doña Juana Domínguez y Rivera a favor de Doña Aurelia Amy y Domínguez, ante el Notario Público Manuel A. Rivera, el 24 de mayo de 1913, el registrador se negó a inscribirla por medio de la siguiente nota, contra la cual se ha interpuesto el presente recurso gubernativo. La nota, en lo pertinente, dice así:

"Denegada la inscripción del precedente documento, por comprender el mismo dos contratos de compraventa e hipoteca que son nulos toda vez que envuelven una condición de pago cuyo cumplimiento se basa en el hecho de la muerte de la vendedora, tomándose anotación preventiva: * * *."

Examinada la escritura de que se trata, resulta que Doña Juana Domínguez y Rivera, dueña de una finca rústica que se describe debidamente, la vendió a Doña Aurelia Amy y Domínguez por la suma de $12,460, de los cuales confesó la vendedora que había recibido $8,000, quedando por consiguiente adeudando la compradora $4,460, pactándose al efecto "que esta cantidad adeudada, la pagará la Señora Amy, sin interés alguno, dentro de los quince días después que ocurra el fallecimiento de la vendedora Doña Juana Domínguez, a las siguientes personas:" (se nombran). La compradora, para garantir la cantidad adeudada, constituyó además hipoteca sobre la misma finca comprada, a favor de las personas

a quienes había de satisfacer dicha suma dentro de los quince días después de ocurrido el fallecimiento de la vendedora.

No obstante haberse enviado al registrador recurrido copias del escrito interponiendo el recurso y del alegato del recurrente y habérsele concedido el término de diez días para que informara lo que estimara oportuno, nada manifestó dicho funcionario. Es muy conveniente que los registradores informen siempre con cierta amplitud sobre los motivos de sus notas y citen las autoridades que les sirvieron de base. De este modo podremos decidir las cuestiones envueltas con la confianza de haber oído el pro y el contra de cada cuestión, y, en su consecuencia, con mayor seguridad de acierto. Para cumplir ese fin, se solicitó de nuevo informe del registrador y entonces lo emitió alegando que procedía la confirmación de la nota recurrida:

"I. Porque en los contratos *inter vivos,* que causan estado entre las partes, no se pueden comprender disposiciones *mortis causa,* que son esencialmente revocables, y en el contrato de compraventa e hipoteca de Doña Juana Domínguez y Don Alfredo Amy se exige la muerte previa de Doña Juana Domínguez, porque hasta que la contratante vendedora no muera no está obligado el comprador a consumar el contrato de compraventa entregando parte del precio aplazado a las personas designadas por la voluntad de la misma vendedora. Es un contrato *inter vivos* con una condición *mortis causa* y conforme al artículo 1083 del Código Civil las condiciones imposibles, las contrarias a las buenas costumbres y las prohibidas por la ley anularán la obligación que de ellas dependa;

"II. Porque el comprador constituye hipoteca a favor de terceras personas para asegurar el pago del precio aplazado; y como mientras viva la vendedora el contrato de compraventa cuyo pago parcial asegura la hipoteca, no se puede consumar, aparece el comprador constituyendo hipoteca a favor de terceras personas sobre bienes que todavía no son suyos ni lo serán mientras viva la vendedora, y según el No. 2 del

artículo 1758 es requisito esencial del contrato de hipoteca que la cosa hipotecada pertenezca en propiedad al que hipoteca; y

"III. Porque el contrato de hipoteca y compraventa presentado para su inscripción, envuelve una condición *mortis causa,* cual es la de disponer de parte del precio aplazado para después de la muerte de uno de los contratantes, e indirectamente burla la prescripción del artículo 368 del Código Político, porque disponiendo el pago de determinadas cantidades a terceras personas para después que ocurra el fallecimiento del trasmitente, sin que esas terceras personas resulten obligadas bajo ningún aspecto, hace innecesario, en ese caso, el otorgamiento de legados."

Examinaremos los tres fundamentos de la nota recurrida, siguiendo el mismo orden en que han sido presentados.

1. A nuestro juicio, la escritura de 24 de mayo de 1913, aparece bien calificada por el notario que la autoriza, esto es, como de compraventa e hipoteca voluntaria. Por el contrato de compra y venta uno de los contratantes se obliga a entregar una cosa determinada y el otro a pagar por ella un precio cierto en dinero o signo que lo represente, y por el de hipoteca se asegura el cumplimiento de una obligación principal. En el presente caso existen todos los elementos necesarios para la celebración de ambos contratos. En cuanto al de compraventa, hay una cosa determinada: la finca rústica descrita en la escritura, y un precio cierto en dinero: la suma de $12,460. Y en cuanto al de hipoteca, hay una obligación principal cuyo cumplimiento se asegura por ella: el pago de $4,460 adeudados como parte del precio de la finca vendida.

Lo único que introduce alguna confusión en este caso es el hecho de haberse aplazado el pago de parte del precio de la finca para "dentro de quince días después que ocurra el fallecimiento de la vendedora." Si se hubiera celebrado exactamente el mismo contrato y se hubiera consignado en él que el precio aplazado debía satisfacerse, por ejemplo, un año después de la fecha del otorgamiento de la escritura,

ninguna objeción hubiera opuesto seguramente el registrador y el contrato hubiera quedado inscrito sin dificultad en el registro.

¿Varía esencialmente la naturaleza del contrato, el indicado hecho de haberse aplazado parte del precio para dentro de quince días después que ocurra el fallecimiento de la vendedora? Habiendo en consideración las circunstancias de este caso y teniendo en cuenta que solo se trata de calificar la escritura por lo que de ella misma resulta, a los efectos de decidir si es o no inscribible en el registro de la propiedad, nuestra respuesta es negativa.

No podemos concluir que nos encontremos aquí frente a una condición imposible de cumplir, o contraria a las buenas costumbres, o prohibida por la ley. Al parecer el registrador ha confundido el *plazo* con la *condición*. No es una obligación condicional, sino una obligación a plazo, la contraída por Doña Aurelia Amy en la escritura del 24 de mayo de 1913. Hablando de las analogías y diferencias entre el plazo y la condición, se expresa Manresa como sigue:

"Entre el plazo y la condición de las obligaciones existen analogías y diferencias:

"(a) *Por su cumplimiento.*—Basta fijarse en el concepto y efectos del plazo para percibir claramente la semejanza que en cualquiera de sus especies guarda con la correspondiente de las condiciones; pero, sin embargo, entre éste y aquel otro accidente, hay evidentes e importantísimas diferencias, expresada claramente la principal en este artículo del código. La condición es, según el 1113, un acontecimiento incierto; el plazo es un suceso que necesariamente, más o menos tarde, en fecha de antemano conocida, o en época que no se puede determinar, ha de llegar. Tan esencial es esa diferencia, que comprendiéndola el legislador, y previendo, con motivo, que por deficiencias de técnica en los actos jurídicos se califique de plazo a un acontecimiento de incierta realización, dispone que en tales casos, sobreponiéndose la esencia al nombre, se regule como obligación condicional la que por tal acontecimiento esté afectada.

"(b) *Por el tiempo.*—Otra diferencia, aunque menos importante que la expresada, consiste en que mientras el plazo mira al porvenir, teniendo que realizarse siempre en lo futuro, en cambio la condición,

con tal de que concurra la circunstancia de ser su cumplimiento ignorado por los interesados, ha podido tener lugar en época anterior.

     *        *        *        *        *        *        *

"(c) *Por la influencia en la obligación.*—Consecuencia de las diferencias, ya explicadas, señaladamente de la primera, es el distinto influjo de uno y otro elemento en la relación obligatoria: la condición puede hacer que surta o nó efectos aquélla, que exista o deje de existir; el plazo no pasa de imponer una limitación en el tiempo a la producción de aquéllos y a la eficacia de ésta. Verdad es que también tiene efecto suspensivo o resolutorio; pero cuando suspende, no alcanza a impedir que al cabo surja la obligación, y cuando la resuelve no anula, ni como ficción, el hecho de su existencia." 8 Manresa. Código Civil Español, 153, 154, 2ª. edición.

Veamos si el plazo fijado en este caso cumple las exigencias de la ley. El artículo 1092 del Código Civil Revisado, refiriéndose a las obligaciones a plazo, dice que sólo serán exigibles cuando llegue el día cierto señalado para su cumplimiento, y expresa que se entiende "por día cierto aquel que necesariamente ha de venir, aunque se ignore cuándo." Ignoramos cuándo ha de llegar la hora de nuestra muerte, pero todos estamos completamente seguros de que ha de llegar algún día. De ahí que fijar el cumplimiento de una obligación para un plazo de quince días, por ejemplo, contados a partir de la muerte de una persona, deba entenderse como la fijación de un día cierto en el cual será exigible la obligación contraída.

Comentando Manresa el artículo 1125 del Código Civil Español, igual al 1092 de nuestro Código, dice: "Una u otra especie de plazos pueden ser determinados o indeterminados, según que esté aquél referido a una fecha conocida (v. gr., el día tantos de tal año), o a un acontecimiento que, habiendo de realizarse seguramente, no se sabe cuándo tendrá lugar (v. gr., la muerte de alguien)." 8 Manresa, Col. Civ. Esp., 156.

Y Escriche, en la pág. 304, del tomo 4, de su Diccionario de Legislación, se expresa así: "*Obligación a día o a plazo.* La que se contrae para cumplirla dentro de algún espacio de

tiempo, ya sea determinado, como dentro de seis meses o para el día primero de tal mes, ya sea indeterminado, como para el día de la muerte de cierto sujeto.''

2. El registrador invoca el artículo 1758 del Código Civil, en apoyo de su negativa en cuanto al particular de la nulidad de la hipoteca, por haberse constituído ésta, según él, por una persona que no tenía el dominio sobre el inmueble hipotecado. Es cierto que el número 2°. de dicho artículo expresa que es requisito esencial del contrato de hipoteca que la cosa hipotecada pertenezca en propiedad al que. la hipoteca, pero también lo es que no puede sostenerse que la Señora Amy en este caso no fuera dueña de la finca hipotecada al tiempo de gravarla. Por la escritura de 24 de mayo de 1913, ella adquirió el dominio de la finca y acto seguido la gravó para responder de parte. del precio aplazado, realizando así actos enteramente lógicos y autorizados por la costumbre y la ley.

La cuestión no es nueva. La Ley Hipotecaria española, antes que el Código Civil, dispuso que la hipoteca no podía ser constituída sobre ningún inmueble por persona que no acreditare su propiedad. Después de promulgada dicha ley se suscitó la cuestión de si podía constituirse hipoteca al mismo tiempo de adquirir el dominio de la cosa que había de ser gravada, o sea por aquel que no tuviera aún la propiedad, pero que hubiera de ganarla en el mismo acto o al mismo tiempo, antes por lo tanto de estar hecha a su favor en el registro la inscripción de dicha propiedad, habiéndose resuelto afirmativamente la duda por la Dirección General de los Registros, si bien con la condición de que se inscriba antes el dominio e inmediatamente después la hipoteca. Véanse: 12 Manresa, Código Civil, 284, y las resoluciones. de la Dirección General de los Registros de 1 de octubre, 1874; 22 de diciembre, 1862, 17 de agosto, 1863, y 30 de octubre, 1871.

3. Con respecto a la indirecta violación del artículo 368 del Código Político que observa el registrador, sólo diremos que negar la inscripción del documento por tal motivo, equi-

valdría a llegar a la conclusión de que se había cometido un fraude en contra del tesoro público. Y para ello se necesitarían más pruebas que las dudas que pueda levantar en la conciencia del que examine la escritura de 24 de mayo de 1913, la forma rara de estipular el pago de una parte del precio de la finca vendida.

Como dijimos anteriormente, sólo se trata aquí de resolver si es inscribible o no el documento en cuestión. Atendidas todas las circunstancias concurrentes, opinamos que lo es, y, en tal virtud, que debe declararse con lugar el recurso, revocarse la nota recurrida y ordenarse la inscripción solicitada.

*Revocada la nota recurrida.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, Aldrey y Hutchison.