Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| MARGARITA VEGA VÉLEZ<br><br>Apelante<br><br>v.<br><br>FOREST CC, CORP.; ET ALS<br><br>Apelados | KLAN202400425 | *Apelación* Procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Civil Núm.: ISCI201500583<br><br>(Sala 206)<br><br>Sobre:<br><br>Incumplimiento de Contrato; Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres y la Jueza Rivera Pérez.

**Rivera Pérez, Jueza Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 31 de mayo de 2024.

Comparece la Sra. Margarita Vega Vélez (en adelante, Sra. Vega Vélez) mediante un recurso de apelación y nos solicita que revisemos la *Sentencia* dictada el 26 de septiembre de 2023 y notificada el 2 de abril de 2024[1] por el Tribunal de Primera Instancia, Sala de Superior de Mayagüez (en adelante, TPI).[2] Mediante la referida sentencia, el TPI declaró Ha Lugar la *Moción Solicitando Desestimación* presentada el 10 de abril de 2023 por Forest CC, Corp. En consecuencia, se desestimó la demanda presentada por la Sra. Vega Vélez en contra de la parte apelada. Además, el TPI le impuso en su Sentencia a la Sra. Vega Vélez el pago de la suma de $3,000.00 por concepto de honorarios de abogado por temeridad.[3]

---

[1] Véase, *Notificación Enmendada* en Apéndice de la *Apelación Civil*, págs. 163-176.
[2] Apéndice de la *Apelación Civil*, a las págs. 163-176.
[3] *Íd.*

Número Identificador

SEN 2024_____

Por los fundamentos que expondremos, se confirma la *Sentencia* apelada.

## I.

Según surge del expediente, el 7 de mayo de 2015, la Sra. Vega Vélez presentó una demanda sobre incumplimiento de contrato y daños y perjuicio en contra de la desarrolladora y vendedora Forest CC, Corp. (en adelante, Forest CC); Banco Popular de Puerto Rico; Popular Mortgage Inc.; Constructora Gregory Inc.; el Sr. Alberto C. Gregory Morales, la Sra. Graciela Valentín y la Sociedad de Bienes Gananciales compuesta por ambos; Fulana de Tal Insurance Corp., y Seguros Mengano, Inc.[4]

Luego de varios trámites procesales,[5] el 11 de septiembre de 2017, se presentó una *Demanda Enmendada* para incluir como parte demandada al Sr. Herminio Bosques Medina, la Sra. Vanessa Casillas Agosto y la Sociedad de Bienes Gananciales; y al fideicomiso Cero Five Two Six Living and Grantor Trust.[6] Luego, el 30 de abril

---

[4] Apéndice de la *Apelación Civil*, págs. 76-87.

[5] Entre estas, surge del expediente que el Banco Popular de Puerto Rico presentó una moción de desestimación bajo la Regla 10.2(5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2(5), a la cual se opuso la Sra. Vega Vélez. En atención a esta moción, el 29 de diciembre de 2015, notificada el 7 de enero de 2016, el TPI, por voz del Hon. Miguel Trabal Cuevas, emitió una *Resolución* declarando No Ha Lugar la moción de desestimación por entender que la demanda si exponía una reclamación que justificara la concesión de un remedio contra el Banco Popular de Puerto Rico. Además, en lo pertinente a las controversias ante nuestra consideración, el TPI expresó lo siguiente:

> "En lo relativo a la prescripción de la casusa de acción, las alegaciones de la demanda van dirigidas al incumplimiento de contrato de compraventa y como consecuencia, se solicita la devolución de las prestaciones, de conformidad con el Artículo 1054 del Código Civil de Puerto Rico, 31 LPRA sec. 3018. Dicho artículo establece que quedan sujetos a la indemnización de los daños y perjuicios causados, los que, en el cumplimiento de sus obligaciones, incurrieron en dolo, negligencia o morosidad; y los que, de cualquier modo, contravinieron a tenor de aquellos. El término prescriptivo para la presentación de dicha acción es de quince años, desde la fecha de celebrado el contrato, según lo dispuesto en el Artículo 1864 del Código Civil[,] 31 LPRA sec. 5294." Apéndice de la *Apelación Civil*, págs. 158-162.

Además, el 14 de enero de 2016, notificada el 15 de enero de 2016, el TPI dictó *Sentencia Parcial* declarando Ha Lugar una solicitud de desistimiento presentada por la Sra. Vega Vélez en cuanto a Banco Popular de Puerto Rico, Popular Mortgage Inc., Constructora Gregory Inc., y el Sr. Alberto C. Gregory Morales, la Sra. Graciela Valentín y la Sociedad de Bienes Gananciales compuesta por ambos. En consecuencia, se decretó el archivo con perjuicio de las reclamaciones presentadas contra estos codemandados. Apéndice de la *Apelación Civil*, págs. 177-180.

[6] Apéndice de la *Apelación Civil*, págs. 92-100.

de 2019, se presentó una *Segunda Demanda Enmendada* para incluir como parte demandada a Oriental Bank y enmendar algunas de las alegaciones de la demanda relacionadas a la causa de acción.[7]

En lo pertinente, la Sra. Vega Vélez alegó en su reclamación que el 25 de junio de 2007 suscribió un contrato de compraventa con la compañía desarrolladora Forest CC respecto a un apartamento ubicado en el condominio Blue at Boquerón en el Municipio de Cabo Rojo por el precio de $247,000.00. Según la Sra. Vega Vélez, la compañía desarrolladora se comprometió en el contrato, entre otras cosas, a construir el edificio en conformidad con los planos aprobados por la Administración de Reglamentos y Permisos ("ARPe").[8]

La Sra. Vega Vélez alegó que, al poco tiempo de tomar posesión del apartamento, comenzaron a ocurrir una serie de incidentes relacionados al mantenimiento de las áreas comunes y a defectos en la construcción del edificio. Esta situación llevó a la Sra. Vega Vélez a presentar varias querellas ante el Departamento de Asuntos del Consumidor ("DACo"). Durante el trámite procesal del caso administrativo, la Sra. Vega Vélez alegadamente advino en conocimiento de que "el edificio está afecto a varios vicios de construcción, debido a que no fue construido de conformidad con el Plano de Construcción aprobado por la Administración de Reglamentos y Permisos."[9]

La Sra. Vega Vélez añadió que se sintió cansada por toda esta situación, por lo que acudió ante la oficina de mitigación de pérdidas del Banco Popular de Puerto Rico para hacer una entrega voluntaria del apartamento, lo cual no pudo llevar a cabo debido a que la propiedad aún no aparecía inscrita a su nombre en el Registro de la

---

[7] Apéndice de la *Apelación Civil*, págs. 118-127.
[8] Hoy día la Oficina de Gerencia de Permisos.
[9] Apéndice de la *Apelación Civil*, pág. 124.

Propiedad, según le informaron en dicha oficina de la institución financiera. Alegadamente, ni la escritura matriz ni las demás escrituras relacionadas al inmueble habían logrado acceso aun al Registro de la Propiedad.

"[A]nte la situación de que [...] no podía refinanciar, vender, permutar y tampoco hacer con su propiedad negocio jurídico alguno, y la negativa del Banco Popular de Puerto Rico, en ofrecerle una alternativa a su situación",[10] la Sra. Vega Vélez alegadamente vació el apartamento y dejó de pagar su préstamo hipotecario. Al poco tiempo, esta fue demandada por el Banco Popular de Puerto Rico en cobro de dinero y ejecución de hipoteca. La Sra. Vega Vélez se allanó a que se dictara sentencia en su contra y el banco finalmente ejecutó la hipoteca.

En la demanda, la Sra. Vega Vélez alegó que Forest CC incumplió con el contrato de compraventa entre las partes al no haber construido el edificio conforme a lo establecido en los planos aprobados. Como consecuencia del incumplimiento del contrato por parte de Forest CC, la Sra. Vega Vélez alegadamente sufrió daños y perjuicios al tener que entregar el apartamento debido a los vicios ocultos. Como remedio, solicitó en la demanda que se ordenara a Forest CC a devolverle el pronto de $5,000.00; y a Banco Popular de Puerto Rico y Popular Mortgage Inc. a devolverle la cantidad pagada de $154,010.07. Asimismo, solicitó una compensación por los daños y perjuicios sufridos, en la cuantía de $100,000.00 más $10,000.00 por concepto de honorarios de abogado, además de cualquier otra reparación que el Tribunal considerara justa y adecuada.

Finalmente, cabe mencionar que en la demanda la Sra. Vega Vélez expresó que las escrituras en cuestión finalmente tuvieron acceso al Registro de la Propiedad el 30 de octubre de 2015, luego

---

[10] Apéndice de la *Apelación Civil*, pág. 125.

de que se corrigieran las faltas que impedían su inscripción notificada por el Registrador. Además, es preciso mencionar que, en la demanda, la Sra. Vega Vélez también expresó lo siguiente:

> "
> 41. El dolo surge cuando "mediante palabras o maquinaciones insidiosas de parte de uno de los contratantes, el otro es inducido a celebrar un contrato que, sin ellas, no hubiera hecho" [...].
> 42. Forest tenía conocimiento de los vicios de construcción y le ocultaron en todo momento a la demandante que el edificio adolecía de los mismos. En el caso Márquez vs Torres Campos [...], el Tribunal Supremo de Puerto Rico, discute la figura del dolo en los contratos y concluye que la actuación dolosa es la ocultación por el demandado de una circunstancia que pudiese constituir un defecto oculto en el objeto vendido y entregado."[11]

El 10 de abril de 2023, Forest CC presentó *Contestación Enmendada a Segunda Demanda Enmendada con Fecha del 30 de abril de 2019*,[12] en la cual negó las alegaciones en su contra y levantó varias defensas afirmativas.[13] Entre sus defensas, Forest CC alegó prescripción; impedimento colateral; academicidad; dejar de exponer una reclamación que justifique la concesión de un remedio, y actos propios.

El 12 de agosto y el 12 de diciembre de 2019, Oriental Bank[14] y el Sr. Herminio Bosques Medina, la Sra. Vanessa Casillas Agosto y la Sociedad de Bienes Gananciales,[15] respectivamente, presentaron sus contestaciones a la segunda demanda enmendada. En síntesis, estos negaron la mayoría de las alegaciones expuestas en la demanda y levantaron varias defensas afirmativas.

Tras varios incidentes procesales, el 10 de abril de 2023, Forest CC presentó una *Moción Solicitando Desestimación* bajo la Regla 10.2(5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2(5).[16] En esta, Forest CC alegó la causa de acción de nulidad de contrato

---

[11] Apéndice de la *Apelación Civil*, págs. 125-126.
[12] Apéndice de la *Apelación Civil*, págs. 128-134.
[13] Entre estas, prescripción de la causa de acción.
[14] Apéndice de la *Apelación Civil*, págs. 146-153.
[15] Apéndice de la *Apelación Civil*, págs. 135-145.
[16] Apéndice de la *Apelación Civil*, págs. 14-26.

por dolo estaba prescrita por haberse presentado transcurrido el término de cuatro (4) años establecido en el Artículo 1253 del Código Civil de 1930, 31 LPRA sec. 3512, desde la consumación del contrato. Además, levantó como defensa la doctrina de cosa juzgada en su modalidad de fraccionamiento de causa de acción alegando que la causa de acción sobre vicios de construcción en su contra se había presentado en una reclamación anterior ante el DACo.[17]

Forest CC añadió que de las alegaciones de la Sra. Vega Vélez se desprendía que la determinación de "dejar de pagar el apartamento, entregarlo al banco y allanarse al procedimiento de ejecución de hipoteca y cobro de dinero radicado por el Banco Popular de Puerto Rico fue una voluntaria".[18] Según su contención, esta determinación estuvo basada en su insatisfacción con la disminución en el valor que sufrieron las unidades del condominio, conforme admitió en la deposición que le fue tomada y un narrativo que preparó sobre los hechos que motivaron la presentación de la demanda.[19] Añadió, además, que, la acción que tenía a su haber la Sra. Vega Vélez era una por vicios ocultos bajo el Artículo 1373 del Código Civil de 1930, 31 LPRA ante. sec. 3541, la cual caducó a los seis (6) meses.

Finalmente, Forest CC le imputó a la Sra. Vega Vélez haber procedido con temeridad, por lo que solicitó que se le impusiera en

---

[17] Según el escrito de apelación, la parte apelante tuvo alegadamente que acudir al DACo mediante la Querella Número MA0002205 bajo la Ley Núm. 104 de 25 de junio de 1958, según enmendada, conocida como *"Ley de Condominios"*, 31 LPRA ant. sec. 1291, por la falta de mantenimiento de las áreas comunes y del edificio y solicitar que se obligara a Forest CC a reparar los desperfectos en dichas áreas comunes y a culminar el mismo, según los planos aprobados por ARPe. Véase *Apelación Civil*, pág. 7. El 20 de marzo de 2014, notificada el 4 de abril de 2024, el DACo emitió *Resolución* ordenándole a Forest a suministrar y/o cubrir los gastos referentes a materiales y labor necesaria para corregir las deficiencias mencionadas en las páginas 6 y 7 del dictamen en un término de veinte (20) días. En específico, las deficiencias de referencia eran las siguientes: desagüe del edificio, control portón acceso, pintura del edificio, puertas baño piscina, comején en el árbol del lateral derecho, circuitos eléctricos, desagües obstruidos, trinchera área del estacionamiento, limo alero segundo piso, copia de llaves, estacionamiento de impedido, y BBQ del área de la piscina.
[18] Apéndice de la *Apelación Civil*, pág. 23.
[19] Apéndice de la *Apelación Civil*, págs. 23-24.

la sentencia el pago de una suma por concepto de honorarios de abogado.

El 20 de abril de 2023, el Sr. Herminio Bosques Medina, la Sra. Vanessa Casillas Agosto y la Sociedad de Bienes Gananciales presentaron una *Moción para Unirnos a la "Moción Solicitando Desestimación".*[20] Por su parte, el 15 de mayo de 2023, Oriental Bank presentó una *Moción Informativa y Uniéndose a Moción de Desestimación.*[21]

Luego de varias prórrogas, el 1 de septiembre de 2023, la Sra. Vega Vélez presentó su *Moción en Oposición a Moción de Desestimación.*[22] En síntesis, alegó que su acción era una por incumplimiento de contrato bajo el Artículo 1054 del Código Civil de 1930, 31 LPRA ant. sec. 3018, por lo que le aplicaba el término prescriptivo general de quince (15) años del Artículo 1864 del Código Civil de 1930, 31 LPRA ant. sec. 5294. Además, la Sra. Vega Vélez alegó que no procedía la defensa de cosa juzgada en su modalidad de fraccionamiento de causa de acción debido a que la reclamación de vicios de construcción y falta de mantenimiento que se presentó ante el DACo era una distinta a la presente donde se estaba alegando incumplimiento contractual y daños y perjuicios.

Finalmente, el 26 de septiembre de 2023, el TPI dictó y notificó[23] la *Sentencia*[24] apelada, mediante la cual declaró Ha Lugar la *Moción Solicitando Desestimación* presentada el 10 de abril de 2023 por Forest CC y, en consecuencia, se desestimó la demanda presentada por la Sra. Vega Vélez. Además, el TPI le impuso en su sentencia a la Sra. Vega Vélez el pago de la suma de $3,000.00 por

---

[20] Apéndice de la *Apelación Civil*, págs. 27-28.
[21] Apéndice de la *Apelación Civil*, págs. 33-39.
[22] Apéndice de la *Apelación Civil*, págs. 29-32.
[23] El 2 de abril de 2024, se notificó nuevamente la *Sentencia*, mediante *Notificación Enmendada* en atención al *Mandato* expedido por este Tribunal de Apelaciones en el caso KLAN202301053. Véase, Apéndice de la *Apelación Civil*, págs. 163-176.
[24] Apéndice de la *Apelación Civil*, págs. 1-13.

concepto de honorarios de abogado por temeridad.[25] En el dictamen, el TPI concluyó y resolvió lo siguiente:

> "[...] Este Tribunal ha analizado las posiciones de todas las partes involucradas en el presente caso y concluye que la reclamación instada está prescrita por radicarse luego de los cuatro (4) años indicados en el Artículo 1253 del Código Civil del 1930 y, además, le aplica la doctrina de cosa juzgada. [...]."[26]

El 11 de octubre de 2023, la Sra. Vega Vélez presentó una *Moción al Amparo de la Regla 42.2 y de Reconsideración a la Sentencia*, en la cual solicitó la reconsideración del dictamen y que se realizaran determinación de hechos adicionales.[27]

El 23 de octubre de 2023, notificada al día siguiente, el TPI emitió una *Resolución y/o Orden*, en la cual, entre otros asuntos, declaró *No Ha Lugar* la moción en solicitud de reconsideración y de determinaciones de hechos adicionales presentada por la Sra. Vega Vélez.[28]

En desacuerdo con la determinación del TPI, la Sra. Vega Vélez acudió ante nos el 1 de mayo de 2022 mediante el presente recurso de *Apelación Civil*, en la cual señala los errores siguientes:

> **Primer error:** Erró el Honorable Tribunal de Primera Instancia al aplicar el Artículo 1253 del Código Civil de Puerto Rico con relación a la prescripción por dolo, contrario a lo que ya había resuelto el propio Tribunal en su Resolución del 29 de diciembre de 2015 dentro del mismo caso.
>
> **Segundo error:** Erró el Honorable Tribunal de Instancia al aplicar el caso *Miranda v. López*, 58 D.P.R. 234, 235 (1941) como único fundamento para revocar la Ley del Caso emitida por el Honorable Miguel Trabal Cuevas en el mismo caso.
>
> **Tercer error:** Erró el Honorable Tribunal de Primera Instancia al aplicar la doctrina de cosa juzgada.
>
> **Cuarto error:** Erró el Honorable Tribunal de Primera Instancia al determinar que la parte demandante fue temeraria y frívola por llevar su causa de acción de incumplimiento de contrato y por ello conceder

---

[25] *Íd.*
[26] Apéndice de la *Apelación Civil*, págs. 1-13.
[27] Apéndice de la *Apelación Civil*, págs. 40-73.
[28] Apéndice de la *Apelación Civil*, págs. 74-75.

honorarios de abogados de abogados a la parte demandada.

El 7 de mayo de 2024, emitimos una *Resolución* concediendo a la parte apelada hasta el 28 de mayo de 2024 para expresarse con respecto al recurso.

El 28 de mayo de 2024, la Forest CC y el Sr. Herminio Bosques Medina, la Sra. Vanessa Casillas Agosto y la Sociedad Legal de Bienes Gananciales compuesta por ambos presentaron una *Solicitud de Desestimación y Alegato en Oposición a Apelación Civil*, a la cual se unió Oriental Bank mediante una *Moción Uniéndonos a Solicitud de Desestimación y Alegato en Oposición a Apelación Civil y en Torno a Recurso de Apelación Presentado por la Parte Demandante* presentada en la misma fecha.

Así, contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

## A.

En nuestro ordenamiento jurídico, la doctrina de cosa juzgada se encuentra tipificada en el Artículo 1204 del Código Civil de 1930, 31 LPRA ant. sec. 3343.[29] El referido Artículo dispone, en lo pertinente, lo siguiente:

> "[...] Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron. [...]"

Esta doctrina ha sido definida como "lo ya resuelto por fallo firme de un Juez o Tribunal competente, y lleva en sí la firmeza de su irrevocabilidad". *Presidential v. Transcaribe*, 186 DPR 263, 273 (2012), citando a J.M. Manresa, *Comentarios al Código Civil Español*,

---

[29] El "Código Civil de Puerto Rico", Edición de 1930, fue derogado y sustituido por la Ley Núm. 55-2020, según emendada, conocida como *"Código Civil de Puerto Rico" de 2020*, 31 LPRA sec. 5311 *et seq.* No obstante, los hechos que originan la presente controversia tomaron lugar durante la vigencia del código anterior, por lo cual esta es la ley que aplica al caso.

6ta ed. rev., Madrid, Ed. Reus, 1967, T. VIII, Vol. 2, pág. 278. Por lo tanto y a tenor con lo anterior, la doctrina de cosa juzgada "persigue poner fin a los litigios luego de haber sido adjudicados de forma definitiva por los tribunales y, de este modo, garantizar la certidumbre y la seguridad de los derechos declarados mediante una resolución judicial para evitar gastos adicionales al Estado y a los litigantes". *Íd.*, págs. 273-274.

Se ha señalado que, por un lado, la doctrina de cosa juzgada vela por el interés gubernamental de que se finalicen los pleitos y, por otro lado, se interesa en no someter a los ciudadanos a las molestias de tener que litigar dos veces una misma causa. *Íd.*; *Fonseca et al. v. Hosp. HIMA*, 184 DPR 281 (2012); *P.R. Wire Prod. v. C. Crespo & Asoc.*, 175 DPR 139 (2008). Sin embargo, se ha señalado, además, que la aplicación de dicha doctrina no procede de forma inflexible y automática cuando hacerlo derrotaría los fines de la justicia o consideraciones de orden público. *Íd.* Conforme a lo dispuesto en el Artículo 1204 del Código Civil de 1930, *supra*, la presunción de cosa juzgada sólo tendrá efecto si existe la más perfecta identidad de las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron.

A los fines de aplicar la doctrina de cosa juzgada, el requisito de la identidad de cosas significa que el segundo pleito se refiere al mismo asunto que versó el primer pleito, aunque las cosas hayan sufrido disminución o alteración. *Presidential v. Transcaribe*, supra, pág. 275. La cosa es el objeto o materia sobre la cual se ejercita la acción. *Íd.* Un criterio certero para determinar si existe identidad del objeto es, si un juez está expuesto a contradecir una decisión anterior afirmando un derecho nacido o naciente. *Íd.* Quiere decir, que existe identidad de objeto cuando un juez al hacer una determinación se expone a contradecir el derecho afirmado en una decisión anterior. Se tiene que identificar cuál es el bien jurídico

cuya protección o concesión se solicita del juzgador. *Íd.* Hay que considerar no sólo la cosa sobre la cual se suscita la controversia, sino también el planteamiento jurídico que se genera en torno a ella. *Íd.*

Por otra parte, la identidad de causa existe cuando los hechos y los fundamentos de las peticiones son idénticos en lo que afecta a la cuestión planteada. *Íd.* Al determinar si existe identidad de causas de acción debemos preguntarnos si ambas reclamaciones se basan en la misma transacción o núcleo de hechos. *Íd.*; *Martínez Díaz v. E.L.A.*, 182 DPR 580 (2011).

Finalmente, en cuanto a la identidad de las personas de los litigantes y la calidad en que lo fueron, el propio Artículo 1204 del Código Civil, *supra*, dispone, en lo pertinente, que:

> "Se entiende que hay identidad de personas siempre que los litigantes del segundo pleito sean causahabientes de los que contendieron en el pleito anterior, o estén unido a ellos por vínculos de solidaridad o por los que establece la indivisibilidad de las prestaciones entre los que tienen derecho a exigirlas u obligación de satisfacerlas." *Íd.*, págs. 275-276.

El fraccionamiento de causa de acción e impedimento colateral por sentencia son dos modalidades de la doctrina de cosa juzgada. En cuanto a la modalidad de fraccionamiento de causa de acción en particular, el Tribunal Supremo ha expresado que esta aplica a toda reclamación posterior que se presente entre las mismas partes y sobre el mismo asunto. *Íd.*, págs. 277-278; *S.L.G. S.L.G. Szendrey-Ramos v. Consejo Titulares*, 184 DPR 133 (2011); *Abengoa, S.A. v. American Intl. Ins. Co.*, 176 DPR 512 (2009). Si un demandante tiene varias reclamaciones, que surgen de un mismo evento, contra un mismo demandado y presenta una de esas reclamaciones, se aplicará esta modalidad si luego de terminado dicho pleito decide presentar otro pleito contra el mismo demandado por las otras reclamaciones. *Íd.*, págs. 277-278.

Ahora bien, se ha señalado que no procede extender esta doctrina a una parte que no fue incluida como demandada en el primer pleito. *Íd.* Además, su aplicación se limitará a reclamaciones que son recobrables en la primera acción incoada. *Íd.*

La modalidad de fraccionamiento de causa tiene como propósito promover la finalidad de las controversias judiciales y evitar las continuas molestias a una parte con la presentación sucesiva de varios pleitos relacionados con el mismo asunto. *S.L.G. Szendrey-Ramos v. Consejo Titulares,* supra. Por lo tanto, esta modalidad procede cuando el demandante obtiene sentencia en un primer pleito, y luego radica una segunda acción contra la misma parte por otra porción de esa misma reclamación. *Presidential v. Transcaribe,* supra, pág. 278.

**B.**

En nuestro ordenamiento jurídico, el poder que posee determinada agencia administrativa para actuar está delimitado por el estatuto orgánico o la ley habilitadora. *Muñoz Barrientos v. ELA et al.,* 212 DPR 714, 723 (2023); *Col. Médicos et als. v. Com. Seguros et al.,* 201 DPR 362, 372 (2018); *Amieiro González v. Pinnacle Real Estate,* 173 DPR 363, 371 (2008); *Comisionado de Seguros v. PRIA,* 168 DPR 659, 666 (2006). Véase, también, J.A. Echevarría Vargas, *Derecho Administrativo Puertorriqueño,* 4ta ed. rev., San Juan, Ed. SITUM, 2017, pág. 44.

La ley habilitadora es el mecanismo legal que delega a las referidas agencias los poderes y las facultades necesarias para actuar en conformidad con el propósito legislativo. *Muñoz Barrientos v. ELA et al.,* supra; *Amieiro González v. Pinnacle Real Estate, supra; Caribe Comms., Inc. v. P.R.T.Co.,* 157 DPR 203, 211 (2002).

Históricamente, la Asamblea Legislativa ha delegado a las agencias administrativas dos poderes esenciales: el poder de reglamentar, al ejercer funciones cuasi-legislativas y, el poder de

adjudicar controversias, al ejercer funciones cuasi-judiciales dentro de la pericia de la agencia. *Muñoz Barrientos v. ELA et al.*, supra; *Caribe Comms., Inc. v. P.R.T.Co., supra*. Véase, además, Echevarría Vargas, *op. cit.*, pág. 25.

Al amparo de las facultades cuasi-judiciales, se le ha reconocido también a las agencias la potestad para "resolver controversias y [...] para dictar todos aquellos remedios que resulten cónsonos y proporcionales con las alegadas desviaciones legales y reglamentarias" con el fin de hacer efectivo el proceso administrativo. *Muñoz Barrientos v. ELA et al.*, supra, pág. 724, citando a Echevarría Vargas, *op. cit.*, pág. 272.

En lo pertinente al caso ante nuestra consideración, el Tribunal Supremo ha resuelto que es válida la delegación a las agencias administrativas de la facultad para otorgar compensación por los daños y perjuicios sufridos por determinada persona. *Íd.*, págs. 724-725; *Caribe Comms., Inc. v. P.R.T.Co., supra; Acevedo v. Mun. de Aguadilla*, 153 DPR 788, 803 (2001); *Quiñones v. San Rafael Estates, S.E.*, 143 DPR 756, 765-766 (1997). En particular, se ha resuelto que es válida tal delegación en dos instancias: 1) cuando la ley habilitadora de la agencia le concede expresamente esa facultad, y 2) cuando, al no estar facultada para imponer daños, dicho poder se encuentra implícito en la amplia facultad de la agencia para conceder un remedio que adelante los intereses de su ley orgánica y la política pública que la inspiró. *Íd.*

Por lo tanto, no todas las agencias administrativas poseen autoridad para otorgar indemnización en daños y perjuicios. *Muñoz Barrientos v. ELA et al.*, supra, pág. 725, citando a Echevarría Vargas, *op. cit.*, pág. 272.

> "[E]n situaciones en las que el foro administrativo [...] no está facultado por ley para conceder indemnización por los daños y perjuicios sufridos [...]. En tales circunstancias, [la parte perjudicada] 'debe acudir directamente al foro judicial con su acción en reclamo

de daños y perjuicios para que se entienda interrumpido el término prescriptivo'". *Íd.,* citando a *Igartúa de la Rosa v. A.D.T.,* 147 DPR 318, 332-333, (1998), citando a *Cintrón v. E.L.A.,* 127 DPR 582, 595 (1990).

Es norma firmemente establecida que "la procedencia de una acción en daños, que la agencia no puede adjudicar ni conceder, no requiere de la intervención o pericia por parte de la agencia concernida". *Muñoz Barrientos v. ELA et al.,* supra, pág. 727; *Guzmán y otros v. E.L.A.,* 156 DPR 693, 723-725 (2002). Por lo cual, en esas instancias la parte puede originar su causa de acción en daños ante los foros judiciales sin previo trámite administrativo, pues la agencia carece de jurisdicción para entender en el asunto. *Íd.*

**c.**

Desde la aprobación de la Ley Núm. 130 de 13 de junio de 1967, según enmendada, conocida como *"Ley de la Oficina del Oficial de Construcción adscrita al Departamento de Asuntos del Consumidor",* 17 LPRA sec. 501 *et seq.,* se ha conceptualizado el dejar de reparar defectos de construcción de una vivienda como una práctica indeseable por parte del constructor. *Quiñones v. San Rafael Estates, S.E.,* supra, pág. 764. El DACo es la agencia encargada de poner en vigor esta legislación. *Íd.* Dicha agencia tiene la facultad expresa de tomar las medidas correctivas que procedan en derecho y de interponer cualquier remedio legal necesario para hacer efectivos los propósitos de la ley. Véase, Artículo 6 de la Ley Núm. 5 de 23 de abril de 1973, 3 LPRA sec. 341 *et seq.*.

En virtud de la autoridad conferida al Secretario de DACo por la Ley Núm. 130 de 13 de junio de 1967, *supra,* y la Ley Núm. 5 de 23 de abril de 1973, según enmendada, conocida como *"Ley Orgánica del Departamento de Asuntos del Consumidor",* 3 LPRA sec. 341 *et seq.,* se aprobó el Reglamento para Regular las Distintas Actividades que se llevan a cabo en el Negocio de la Construcción de

Viviendas Privadas en Puerto Rico, Reglamento Núm. 2268, Departamento de Estado, 16 de septiembre de 1977. En la Sección 2(8) se faculta al Secretario de DACo "a investigar y adjudicar las querellas radicadas sobre prácticas indeseables en el negocio de la construcción; *concediendo los remedios pertinentes conforme a derecho.*" (Énfasis suplido). A su vez, en la Sección 10 del se establecen las Prácticas Indeseables en el negocio de la construcción de vivienda incluyéndose en el inciso (J) cuando el constructor:

> "J) *Deje de corregir cualesquiera de los defectos de construcción* que a continuación se enumeran o cualquier otra anormalidad que no se encuentre aquí enumerada, pero que el Secretario determine que es defecto de construcción [...] dentro de un período de tiempo razonable según lo determine el Secretario." (Énfasis suplido).

En *Quiñones v. San Rafael Estates, S.E.*, supra, pág. 772-773, el Tribunal Supremo resolvió que "las reclamaciones de daños que surgieran de querellas sobre incumplimiento de contrato *o defectos de construcción,* se ventilaran administrativamente en D.A.C.O. para así evitar ventilar el caso nuevamente en los tribunales." Al respecto, dicho foro explicó y concluyó lo siguiente:

> "Concluimos que de las leyes reseñadas surge con claridad la facultad de D.A.C.O. para imponer compensación por daños y perjuicios por la omisión de los constructores en reparar los defectos de construcción según definidos en, el *Reglamento del Negocio de la Construcción.* Esas reclamaciones tienen una relación directa y sustancial con el servicio público que D.A.C.O. está obligado por ley a ofrecer a los consumidores. Al esta agencia ejercer esta facultad, adelanta los intereses de su ley habilitadora que se sintetiza en el deseo de proteger a los consumidores de prácticas indeseables por parte de los constructores y de proveer un remedio rápido, efectivo y sencillo, sin tener que recurrir a los tribunales y sufragar los costos de un litigio contra una parte que, como regla general, tiene más recursos. Nada nos parece más justo y acorde con la intención legislativa tras la creación de D.A.C.O. con sus amplios poderes para proteger los derechos de los consumidores." *Íd.*

**D.**

Sabido es que el régimen de propiedad horizontal cumple con una finalidad doble. A saber: (1) proveer a las personas la posibilidad

de disfrutar el derecho a la propiedad plena e individual de un inmueble, y (2) maximizar el uso escaso de terreno disponible en el país. *Con Tit. Centro Int'l Torre II v. PRCI*, 210 DPR 403, 414-415 (2022), citando a *Park Tower, S.E. v. Registradora*, 194 DPR 244, 253 (2015). De esta forma, la propiedad plena e individual coexiste con otros dueños mientras comparten áreas comunes para el disfrute de todas y todos sus integrantes. *Íd.*

La Núm. 104 de 25 de junio de 1958, según enmendada, conocida como la *"Ley de Condominios"*,[30] 31 LPRA ant. sec. 1291 *et seq.*, establece mecanismos para la tramitación de los inevitables conflictos dimanantes del *modus vivendi* de un condominio. *Consejo de Titulares v. Gomez Estremera, et al.*, 184 DPR 407 (2012). Además, detalla el marco organizacional del gobierno interno, cuyo organismo rector y deliberativo lo es el Consejo de Titulares. *Íd.* Véase, Artículo 1-A de la Núm. 104 de 25 de junio de 1958, *supra*.

Ahora bien, en cuanto a la administración interina, el Artículo 36-A de la Núm. 104 de 25 de junio de 1958, *supra*, disponía en lo pertinente lo siguiente:

> "El titular o los titulares que sometan el inmueble al régimen de propiedad horizontal, asumirán la administración inicial del inmueble, con todos los poderes y deberes que esta Ley confiere e impone, y los que el Reglamento confiera e imponga al Director o a la Junta de Directores, al Presidente y al Secretario.
>
> **(a)** La administración interina comenzará tan pronto se venda el primer apartamiento. Desde este momento no podrán enmendarse ni la escritura matriz ni los planos del condominio sin el consentimiento de todos los titulares, excepto para conformar la escritura matriz con los planos inscritos.
>
> […]
>
> **(b)** El administrador interino tendrá las siguientes responsabilidades:
>
> **1.** Atender todo lo relacionado con el buen gobierno, administración, vigilancia, conservación, cuidado,

---

[30] Esta Ley fue derogada y sustituida por la Ley Núm. 129-2020, según enmendada, conocida como *"Ley de Condominios de Puerto Rico"*, 31 LPRA sec. 1921 *et seq.*

reparación y funcionamiento de las cosas y elementos de uso común y de los servicios generales y necesarios para cumplir con lo antedicho en este inciso.

**2.** Llevar un libro de propietarios con el nombre, la firma, el número de teléfono, la dirección postal y residencial de los titulares, anotando las sucesivas transferencias de idéntica manera y también los arrendamientos y conservando copia de las escrituras de venta que acreditan la titularidad de cada condómino.

Cuando el desarrollador cobre a los titulares conforme a la opción 2) anterior, el administrador interino tendrá, además de las responsabilidades enumeradas en el párrafo anterior, las siguientes:

**3.** Dirigir los asuntos financieros del condominio y llevar un libro detallado de todas las partidas de ingresos y egresos que afecten al inmueble y a su administración, fijándose por orden de fecha y especificando los gastos de conservación y reparación de los elementos comunes. Cada egreso deberá acreditarse con un comprobante, factura o recibo. El libro de los comprobantes, facturas y recibos deberá estar disponibles para examen de los titulares en días y horas laborables. El Administrador Interino notificará a los titulares el lugar donde estarán disponibles.

**4.** Cobrar a los titulares las cantidades con que deben contribuir a los gastos comunes y realizar cualquier otro cobro a que la comunidad tenga derecho, velando particularmente porque el titular de los apartamientos no vendidos aún deposite en la cuenta de la comunidad de condóminos la parte proporcional correspondiente a dichos apartamientos, incluidas las aportaciones al fondo de reserva. El administrador interino le cobrará a los titulares al momento del cierre, en concepto de cuotas adelantadas de mantenimiento, una (1) mensualidad del presupuesto a que se refiere el número (6) subsiguiente y dos (2) mensualidades como aportación especial al fondo de reserva. El administrador interino no podrá cobrar ninguna otra suma adelantada.

**5.** Notificar a partir de la primera venta a todos los titulares el presupuesto anual a base de los gastos reales y razonables de mantenimiento que se proyectan incurrir durante el año siguiente a partir de la primera venta.

**6.** Formular el presupuesto velando porque el mismo responda razonablemente a las necesidades económicas del condominio, cuidándose de no incluir en el mismo los gastos para la conservación y mantenimiento de la propiedad antes de haberse vendido los apartamientos, ni gasto alguno relacionado con la terminación de las obras de construcción del inmueble o de los apartamientos o con la gestión de venta de los mismos. El presupuesto proyectado sólo podrá modificarse previa notificación a todos los

titulares con treinta (30) días de antelación a la conclusión del año de operaciones presupuestario, para ser efectivo a partir del próximo año operacional.

**7.** Notificar mensualmente a los titulares los ingresos y egresos del condominio y el balance de la cuenta en el banco durante el mes que antecede a la notificación.

**8.** Llevar un libro de propietarios con el nombre, firma, número de teléfono, dirección postal y residencial de los titulares, anotando las sucesivas transferencias de idéntica manera y también los arrendamientos y conservando copia de las escrituras de venta que acreditan la titularidad de cada condómino.

**9.** Tener a disposición de los titulares para examen, todos los contratos que otorgue relacionados con su gestión de Administrador Interino." Véase, además, Sección 18 del Reglamento sobre Condominios, Reglamento Núm. 6728, Departamento de Estado, 26 de noviembre de 2003.

Por otra parte, el Artículo 42 de la Núm. 104 de 25 de junio de 1958, *supra*, establece el foro adecuado y con jurisdicción para presentar las distintas acciones de impugnación bajo el régimen de propiedad horizontal. Este Artículo dispone en lo pertinente lo siguiente:

"Los acuerdos del Consejo de Titulares **y las determinaciones, omisiones o actuaciones** del Director o de la Junta de Directores, **del titular que somete el inmueble al régimen que establece esta Ley, durante el período de administración que contempla el Artículo 36-A**, del Presidente y del Secretario, **concernientes a la administración de inmuebles** que no comprendan apartamientos destinados a vivienda o de titulares de apartamientos no residenciales en los condominios en donde exista por lo menos un apartamiento dedicado a vivienda, serán impugnables ante el Tribunal de primera instancia por cualquier titular que estimase que el acuerdo, determinación, omisión o actuación en cuestión es gravemente perjudicial para él o para la comunidad de titulares o es contrario a la ley, a la escritura de constitución o al Reglamento a que hace referencia el Artículo 36. **Las impugnaciones por los titulares de apartamientos destinados a viviendas se presentarán ante el Departamento de Asuntos al Consumidor."** Artículo 42 de la Núm. 104 de 25 de junio de 1958, *supra*.

En lo pertinente al caso ante nuestra consideración, tal y como se observa del Artículo antes citado, la Ley Núm. 104 de 25 de junio de 1958, *supra*, le confirió jurisdicción exclusiva al DACo para

entender en acciones de determinaciones, actuaciones u omisiones del administrador interino relacionadas con la administración de inmuebles que comprendan por lo menos un apartamento destinado a vivienda. *Íd.* Véase, además, *Consejo Cond. Plaza del Mar v. Jetter*, 169 DPR 643, 659 (2006).

En virtud del Artículo 48 de la Núm. 104 de 25 de junio de 1958, *supra,* se creó en el DACo "una División Especial de Adjudicación de Querellas de Condominios, para atender todo lo relacionado a todo condominio en el que exista por lo menos un apartamiento dedicado a vivienda." Se facultó además al Secretario del DACo "para adoptar un reglamento especial para la adjudicación de las querellas presentadas en el departamento conforme se dispone en este Artículo, a tenor con lo dispuesto en el Artículo 51 de esta Ley." *Íd.*

Acorde con los poderes conferidos por la referida Ley, el DACo promulgó el Reglamento sobre Condominios, Reglamento Núm. 6728, Departamento de Estado, 26 de noviembre de 2003, mediante el cual se establecieron procedimientos administrativos y requisitos en la venta de condominios bajo la Ley Núm. 104 de 25 de junio de 1958, *supra.*[31] En la Sección 26 del Reglamento Núm. 6728, *supra,* se dispuso lo siguiente en cuanto a la jurisdicción del DACo:

> "El Departamento no tendrá jurisdicción para adjudicar querellas que surjan en condominios de uso exclusivamente comercial o profesional. Igualmente carecerá de jurisdicción en aquellos condominios donde exista por lo menos una unidad de vivienda, y la querella sea interpuesta por un titular o grupo de titulares de apartamentos no residenciales. En estos casos la jurisdicción corresponderá al Tribunal de Primera Instancia. El Departamento sólo atenderá reclamaciones del titular o grupo de titulares que sean propietarios de las unidades residenciales.

---

[31] El Reglamento Núm. 6728 fue aprobado al amparo de la Ley Núm. 103-2003, mediante la cual se introdujeron una serie enmiendas a la Ley Núm. 104 de 25 de junio de 1958, *supra.* Posteriormente, el Reglamento Núm. 6728 fue sustituido y, en consecuencia, derogado por el Reglamento de Condominios, Reglamento Núm. 9386, Departamento de Estado, 6 de junio de 2022, cuya vigencia comenzó el 6 de julio de 2022.

> También quedará excluido de la jurisdicción del Departamento, toda reclamación que consista en cuestionar alguna cláusula contenida en la escritura matriz o el reglamento del condominio inscrito en el Registro de la Propiedad. Igualmente quedan excluidos [sic] las querellas entre titulares o cuando el Consejo de Titulares o el Director o la Junta de Directores entable reclamación contra uno o varios titulares o residentes del condominio. La jurisdicción para ventilar estas acciones corresponderá al Tribunal de Primera Instancia."

## E.

La Regla 44.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1, faculta a los tribunales a imponer el pago de una cuantía por concepto de honorarios de abogado en casos donde cualesquiera de las partes o sus abogados hayan procedido con temeridad o frivolidad. A falta de una definición de lo que constituye "temeridad", el Tribunal Supremo ha dispuesto que "[l]a temeridad es una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia". *Jarra Corp. v. Axxis Corp.*, 155 DPR 764, 779 (2001).

El propósito de este mecanismo es penalizar al que con su conducta ha obligado a la parte adversa en un litigio a incurrir en gastos. *S.L.G. Flores-Jiménez v. Colberg*, 173 DPR 843, 866 (2008). Los honorarios por temeridad se imponen como:

"[P]enalidad a un litigante perdidoso que[,] por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajos e inconveniencias de un pleito." *Andamios de P.R. v. Newport Bonding,* 179 DPR 503, 520 (2010).

La imposición de honorarios por temeridad descansa en la sana discreción de los tribunales. *Torres Montalvo v. Gobernador ELA,* 194 DPR 760, 790 (2016). Por tanto, una vez un tribunal de primera instancia determina que hubo temeridad, la imposición de honorarios es mandataria. *Meléndez Vega v. El Vocero de PR,* 189

DPR 123, 211 (2013). De modo, que "[p]or ser la determinación de temeridad de índole discrecional, solo debemos de intervenir con ella cuando nos enfrentemos a un caso de abuso de discreción". *Andamios de P.R. v. Newport Bonding*, supra, pág. 546.

**III**

En el primer y segundo error de su recurso de apelación, la Sra. Vega Vélez señala que erró el Tribunal de Primera Instancia al aplicar "el Artículo 1253 del Código Civil de Puerto Rico con relación a la prescripción por dolo, contrario a lo que ya había resuelto el propio Tribunal en su Resolución del 29 de diciembre de 2015 dentro del mismo caso" y "el caso *Miranda v. López,* 58 D.P.R. 234, 235 (1941)[,] como único fundamento para revocar la Ley del Caso emitida por el Honorable Miguel Trabal Cuevas en el mismo caso".

Al respecto, la Sra. Vega Vélez argumenta en su recurso que su reclamación era una acción de incumplimiento de contrato bajo el Artículo 1054 del Código Civil de 1930, *supra,* por lo que le aplicaba el término prescriptivo general de quince (15) años del Artículo 1864 del Código Civil de 1930, *supra.* Además, esta intenta sostener que este asunto de la prescripción había sido considerado y adjudicado previamente por el TPI mediante la *Resolución* de 29 de abril de 2015,[32] la cual se emitió en atención a una moción de desestimación bajo la Regla 10.2(5) de Procedimiento Civil, *supra,* que presentó el Banco Popular de Puerto Rico, quien en aquel entonces era un codemandado. La Sra. Vega Vélez añade que la referida resolución emitida en el 2015 advino final y firme, por lo que debe aplicarse la doctrina de la ley del caso.

Por otra parte, en el tercer error de su recurso de apelación, la Sra. Vega Vélez señala que erró el Tribunal de Primera Instancia al aplicar la doctrina de cosa juzgada. En síntesis, argumenta que

---

[32] Véase la nota al calce núm. 5.

en que la reclamación anterior que se presentó ante el DACo se alegaron vicios de construcción y falta de mantenimiento de las áreas comunes y del edificio, por lo que era una acción distinta a la presente ante el TPI donde se está alegando incumplimiento contractual y daños y perjuicios.

Por su parte, los codemandados y aquí apelados Forest CC, Sr. Herminio Bosques Medina y Sra. Vanessa Casillas Agosto presentaron ante nos una moción solicitando la desestimación del recurso de apelación bajo el fundamento de que no se incluyó en el apéndice copia de la moción de desestimación que presentó el Banco Popular de Puerto Rico en el 2015 y su oposición; y de que la defensa de la doctrina de la ley del caso no fue levantada ante el TPI, por lo que no puede levantarse ahora en apelación.

De los señalamientos de error antes reseñados, procederemos a atender únicamente el tercero, por juzgar que el mismo dispone de este caso.

Según reseñamos, en la *Sentencia* apelada se resolvió que la reclamación de la Sra. Vega Vélez estaba prescrita por haberse presentado transcurrido el término de cuatro (4) años establecido en el Artículo 1253 del Código Civil del 1930, *supra*; y que además aplicaba la doctrina de cosa juzgada. Al resolver así, podemos colegir que el foro recurrido entendió que la reclamación de la Sra. Vega Vélez era una acción de nulidad de contrato por dolo, que sólo duraba cuatro (4) años desde la consumación del contrato; y que, además, este asunto se había juzgado ante el DACo, por lo que no podía juzgarse de nuevo en un proceso distinto ante el tribunal.

Por entender que a la luz de la normativa ante expuesta el DACo tenía en este caso la facultad en ley para entender en la reclamación de la Sra. Vega Vélez y, de ser probados, otorgar indemnización por los alegados daños y perjuicios, confirmamos la sentencia apelada. En este caso, estaban presentes a nuestro juicio

todos los requisitos necesarios para que operara la defensa de cosa juzgada en su modalidad de fraccionamiento de causa, por lo que el TPI actuó correctamente al desestimar la demanda.

El DACo asumió jurisdicción para entender en una acción sobre vicios de construcción y falta de mantenimiento presentada el 6 de diciembre de 2013 por la Sra. Vega Vélez contra de la parte aquí apelada (Querella Núm. MA00002205) solicitando que se le ordenara cumplir con mantener las áreas comunes y culminar la construcción del condominio conforme a los planos aprobados por ARPe.[33] Como resultado de este proceso administrativo, el DACo emitió una *Resolución* el 20 de marzo de 2014, notificada a las partes el 4 de abril de 2014, resolviendo la reclamación a favor de la Sra. Vega Vélez, así como un dictamen posterior apercibiendo a las partes querelladas de las consecuencias que acarreaban el incumplimiento con lo ordenado en el dictamen.[34]

Según expusimos, conforme a la doctrina de cosa juzgada, una vez que se ha juzgado un asunto y deviene firme la resolución recaída en el proceso, dicho asunto no puede juzgarse de nuevo en un proceso distinto. La modalidad de fraccionamiento de causa de la defensa de cosa juzgada procede cuando el demandante obtiene sentencia en un primer pleito, y luego radica una segunda acción contra la misma parte por otra porción de esa misma reclamación.

Luego de examinar las alegaciones expuestas en la segunda demanda enmendada, entendemos que las causas de acción de incumplimiento de contrato y daños y perjuicios de la reclamación del presente caso surgen por los mismos fundamentos que la reclamación ante el DACo, por lo que a nuestro juicio la Sr. Vega Vélez debió presentarlas dentro del mismo proceso de la primera acción incoada. Como vimos, el DACo tiene la facultad en ley para

---

[33] Véase, Apéndice de la *Apelación Civil,* págs. 60-73.
[34] *Íd.*

otorgar una indemnización por los daños sufridos por los compradores ante la omisión de las constructoras de viviendas de reparar vicios ocultos, por lo que estas reclamaciones eran también recobrables ante dicha agencia.

Finalmente, en el cuarto error de su recurso de apelación, la Sra. Vega Vélez señala que erró el Tribunal de Primera Instancia al "determinar que la parte demandante fue temeraria y frívola por llevar su causa de acción de incumplimiento de contrato y por ello conceder honorarios de abogados a la parte demandada." Según expusimos, la imposición de honorarios de abogado por temeridad es una decisión discrecional que recae en el tribunal. Esta decisión se toma cuando se considera que una de las partes ha actuado de manera injustificada, frívola o inapropiada durante el proceso legal, lo que puede llevar a que se le requiera pagar los honorarios legales de la otra parte. La discreción del tribunal significa que tiene libertad de tomar esta decisión basándose en su análisis de los hechos y circunstancias del caso. Intervenir en una decisión discrecional solo suele justificarse en casos excepcionales donde existen errores flagrantes o abuso de poder. No estando estos presentes ante el caso ante nos, procede que le otorguemos deferencia a la determinación del TPI, lo que significa no intervenir con su determinación respecto a la imposición del pago de honorarios de abogado por temeridad.

**IV**

Por los fundamentos anteriormente expuestos, se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones