EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Park Tower, S.E. Peticionaria v. Registradora de la Propiedad de San Juan, Sección Segunda, Hon. Carmen E. Ávila Vargas Recurrida | 2015 TSPR 157 194 DPR ____ |

Número del Caso: RG-2015-3

Fecha: 2 de noviembre de 2015

Abogado de la Parte Peticionaria:

        Lcdo. José Cela Ureña

Registrador de la Propiedad:

        Lcda. Carmen E. Ávila Vargas

Materia: Derecho Registral – Revisión del Registrador o Registradora de condiciones restrictivas previamente inscritas en el Registro de la Propiedad; impedimento para inscribir documentos incompatibles con tales condiciones.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Park Tower, S.E.

    Peticionaria

        v.

Registradora de la Propiedad
de San Juan, Sección
Segunda, Hon. Carmen E.
Ávila Vargas

    Recurrida

RG-2015-3     Recurso
            Gubernativo

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico, a 2 de diciembre de 2015.

En SLG Pérez Rivera v. Registrador, 189 DPR 729 (2013), resolvimos, en el contexto de una solicitud de inscripción de un Régimen de Propiedad Horizontal, que "un registrador no puede revisar la razonabilidad y la validez de unas condiciones restrictivas inscritas previamente en el Registro de la Propiedad".[1] Específicamente señalamos que los argumentos que proponían los peticionarios "[estaban] sujetos a la evaluación de factores

---

[1] SLG Pérez Rivera v. Registrador, 189 DPR 729, 731 (2013).

extraregistrales, los cuales no constaban en los documentos presentados ante el Registro"[2].

En esta ocasión, nos corresponde determinar si la Registradora de la Propiedad actuó correctamente al denegar la inscripción de un Régimen de Propiedad Horizontal por su incompatibilidad con unas servidumbres en equidad previamente inscritas en el Registro de la Propiedad. Resolvemos que la Registradora actuó correctamente.

**I**

El 2 de noviembre de 2001, la parte peticionaria Park Tower, S.E., compareció al Registro de la Propiedad (Registro), Sección II de San Juan, para presentar la escritura número 49 sobre "Constitución del Régimen de la Propiedad Horizontal de Hyde Park Tower", otorgada en San Juan, el 25 de septiembre de 2001, ante el notario Jorge Cela Urena. Tal Régimen de Propiedad Horizontal se constituiría en una finca de su propiedad identificada con el número 7771, inscrita al folio 149 del tomo 224 de Río Piedras Norte, Sección II del Registro de la Propiedad de San Juan.

---

[2] Íd. pág. 739. En *SLG Pérez Rivera,* supra, los peticionarios –cuya solicitud de inscripción era similar a la de la peticionaria del caso de autos– fundamentaron su solicitud de recalificación y posterior Recurso Gubernativo, en que "[...] **el aumento poblacional en la zona urbana de San Juan no justifica la permanencia de amplias residencias familiares en el centro de dicho municipio**". Íd. pág. 733. (Énfasis suplido). Así, adujeron que lo que proponían no constituía "**una desviación de las condiciones restrictivas establecidas hace siete décadas, sino una atemperación a las necesidades de desarrollo actuales**". Íd. (Énfasis suplido).

Dicha finca consiste del solar 225 de la Urbanización Hyde Park de Río Piedras, San Juan, Puerto Rico, con una cabida superficial de 905.2568 metros cuadrados. El solar 225 fue segregado de la finca principal 7557 inscrita al folio 224 del tomo 174 de Río Piedras Norte, Sección II del Registro de la Propiedad de San Juan. La finca 7771 está gravada por su procedencia con unas condiciones restrictivas de edificación, según surge de la certificación registral.

La certificación registral de la finca 7771, al folio 149, en lo pertinente expresa lo siguiente:

"(...)Es segregación de la finca siete mil quinientos cincuenta y siete (...) (Texto omitido). Como tal segregación se halla sujeta a condiciones restrictivas sobre edificación."

Así, en una nota marginal al folio 226 de la finca principal 7557, se expresan, en lo que es pertinente, las siguientes condiciones restrictivas sobre edificación:

"Por escritura 120 otorgada en Río Piedras, el 28 de mayo de 1946 ante el notario Eloy Acosta Domenech, D. Juan Valdejuli Rodríguez, mayor de edad, casado con Juana Pelegrina y vecino de Río Piedras, por sí y como apoderado de su citada esposa, cuyas facultades tiene acreditadas en este Registro, manifiesta que la finca de este número la hubo según la inscripción primera anterior y la cual ha sido urbanizada y dividida en solares según plano aprobado por la Junta de Planificación, Urbanización y Zonificación y quedó subdividida en diez y ocho manzanas marcadas desde la letra "A" hasta la "R" y siendo el deseo de dicho Valldejuli-Rodríguez y su esposa, hacer una urbanización uniforme en la construcción,

le imponen a dichos solares las siguientes restricciones: (1) Los solares comprendidos en las manzanas letras A y B y los marcados con los números ciento sesenta y ocho al ciento setenta de la manzana G; y los solares marcados con las números doscientos cuarenta y seis al doscientos sesenta y cuatro de la manzana L, los solares marcados con los números doscientos sesenta y cinco al doscientos setenta y ocho de la manzana "N"; los solares marcados del número doscientos noventa y nueve al trescientos nueve de la manzana "N" y los solares marcados con las letras "A", "B'', "C", "O" y "P" quedan por la presente asignados como zona comercial, ya que dichos solares dan a las carreteras insulares que pasan por dicha finca. (2) En los solares comprendidos en las manzanas "D", "E" y "F" podrán construirse casas de apartamientos hasta tres pisos, incluyendo la planta baja cuyos solares quedan designados para fines residenciales y sujetos además a las limitaciones establecidas en las párrafos siguientes. **(3) En todos los demás solares se imponen como condiciones las siguientes condiciones restrictivas sobre construcción: (1) En cada uno de estos solares solo podrá construirse una casa para residencia de una o dos familias y su construcción será de concreto armado y bloques y techo de azotea o tejas y a un costo no menor de cinco mil dólares."** (Énfasis suplido).

En este caso, el inmueble que la parte Peticionaria pretende someter al Régimen de Propiedad Horizontal es un edificio de apartamentos de cinco niveles o plantas, con un total de dieciséis apartamentos. Al calificar la escritura mencionada y examinar las constancias del Registro, la Registradora determinó que la construcción del edificio era contraria a las condiciones restrictivas.

En su calificación, señaló la Registradora que existen condiciones restrictivas que establecen que en el solar donde se está constituyendo el Régimen de Propiedad Horizontal, solamente podrá construirse una casa para residencia de una o dos familias. Estas condiciones, señaló la Registradora, impiden la constitución del régimen de un edificio de cinco plantas y dieciséis apartamentos residenciales, como pretende la parte Peticionaria.

Ante la calificación de la Registradora, el 26 de diciembre de 2012, la parte Peticionaria presentó un escrito de recalificación suscrito en la misma fecha por el Notario Jorge Cela Urena. El 16 de abril de 2015, y luego de evaluar las objeciones a la calificación contenidas en el escrito de recalificación, la Registradora denegó la inscripción, reiterándose en el fundamento de su calificación original.

El 6 de mayo de 2015, la parte Peticionaria presentó el Recurso Gubernativo que hoy atendemos. El 12 de mayo de 2015, la Registradora presentó los documentos pertinentes requeridos por el Artículo 77 de la Ley Hipotecaria y del Registro de la Propiedad, y el inciso (i) de la Regla 27 del Reglamento del Tribunal Supremo de Puerto Rico. Por último, el 26 de mayo de 2015, la Registradora presentó su Alegato, quedando el caso perfeccionado. Siendo así, nos disponemos a resolver.

**II**

La calificación registral constituye la piedra angular del principio de legalidad.[3] Esta encuentra su basamento legal en la Ley Núm. 98 de 8 de agosto de 1979, según enmendada, conocida como Ley Hipotecaria y del Registro de la Propiedad (Ley Hipotecaria),[4] y el Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad (Reglamento Hipotecario).[5] La calificación registral demanda del registrador ejercer un juicio valorativo sobre la validez y eficacia de los negocios jurídicos contenidos en los documentos presentados, de manera que solo tengan acceso al Registro los títulos que cumplan con las exigencias legales.[6]

El Art. 64 de la Ley Hipotecaria[7] establece que el registrador de la propiedad está obligado a calificar bajo su responsabilidad la legalidad de los documentos de toda clase en cuya virtud se solicite un asiento. En su parte pertinente, el Art. 64 dispone lo siguiente:

> Los registradores calificarán, bajo su responsabilidad la legalidad de los documentos de toda clase en cuya virtud se solicite un asiento. Dicha calificación comprenderá las formas extrínsecas de los documentos presentados, la capacidad de los otorgantes y la validez de los actos y contratos contenidos en tales documentos. Los registradores fundamentarán su calificación de los actos y contratos a

---

[3] Distribuidores Gas PR v. Registradora, 188 DPR 351 (2013).

[4] 30 LPRA secs. 2001 et seq.

[5] Reglamento Núm. 2674, Departamento de Estado, 9 de julio de 1980, pág. 29.

[6] Rigores, Inc. v. Registrador, 165 DPR 710 (2005).

[7] 30 LPRA sec. 2267.

registrarse en los documentos que se presenten, los asientos registrales vigentes y las leyes.

Como también surge del referido texto, el Registrador no cuenta con la facultad para considerar la legalidad de las calificaciones efectuadas ni de los asientos extendidos con anterioridad por sus predecesores o por ellos mismos. Es por esto, que al calificar un documento el Registrador tiene que atenerse a lo que resulte de los documentos presentados y del estado de derecho creado por inscripciones anteriores. Debe respetar los asientos extendidos los cuales tiene que estimar validos hasta que los tribunales declaren su nulidad.[8]

Por último, y muy pertinente a la controversia que nos ocupa, en el pasado hemos establecido que una de las deficiencias por la cual un registrador está obligado a denegar la inscripción de un título es **la existencia de condiciones restrictivas que impiden el acto o contrato que se pretende inscribir.**[9] Además, el Art. 56 de la Ley Hipotecaria[10], dispone que el Registrador **no puede permitir la inscripción en el Registro de un documento mediante el cual se constituyan, transmitan, modifiquen o extingan derechos reales sobre un bien inmueble, si ya previamente se encuentra inscrito uno que se le opone o es**

---

[8] <u>Cabassa v. Registrador</u>, 116 DPR 861 (1986).

[9] <u>SLG Pérez Rivera v. Registradora</u>, supra; <u>Rigores, Inc. v. Registrador</u>, supra.

[10] 30 LPRA sec. 2259.

**incompatible con el que pretende inscribirse**. El texto del artículo en lo pertinente señala lo siguiente:

> Inscrito o anotado preventivamente en el Registro cualquier documento mediante el cual se constituyan, transmitan, modifiquen o extingan derechos reales sobre un bien inmueble, no podrá inscribirse o anotarse ningún otro de igual o anterior fecha que se le oponga o que sea incompatible, por el cual se trasmita o grave dicho inmueble.

Como señala el tratadista Roca Sastre, este artículo establece en primer lugar que

> [...] los actos registrables que primero ingresen al Registro de la Propiedad gozarán de una preferencia (ya sea excluyente o prelativa) sobre cualquier otro acto presentado con posterioridad, aunque el último acto presentado fuese de fecha anterior (prior tempore potior iure).[11]

Así, en <u>Distribuidores Gas P.R. v. Registrador</u>, 188 DPR 351, 363 (2013), refiriéndonos a este artículo señalamos lo siguiente:

> Los títulos anticipados son los que logran acceso al Registro, mientras que los segundos son rezagados por ser opuestos o incompatibles con el ya presentado. El momento de presentación del título en el Registro es el factor decisivo para otorgar esta preferencia excluyente o de superioridad de rango del derecho objeto del título presentado.

**III**

---

[11] R.M. Roca Sastre, <u>Derecho hipotecario</u>, 8va ed., Barcelona, Ed. Bosch, 1995, T. II, pág. 1.

***Servidumbres en equidad***

La Profesora Margarita E. García Cárdenas nos indica que "[s]iempre ha existido cierto nivel de control sobre la facultad del propietario para construir y desarrollar su inmueble".[12] En las instancias en que este control se da por parte del Estado, tal control obedece y ha obedecido en el pasado, a razones de seguridad, salubridad o simple planificación urbana que propenda a un orden social.[13] No obstante, "[m]ientras el Estado comenzaba a regular, de forma uniforme, el uso de los terrenos, los particulares también tenían interés en comprometer a los adquirientes actuales y sobre todo a los futuros a ciertas limitaciones en cuanto a sus propiedades".[14] Así surge en el siglo 18, tanto en Inglaterra como los Estados Unidos, la figura de las servidumbres en equidad.[15] En Puerto Rico, se reconoció por primera vez esta figura jurídica en 1913, en el caso de <u>Glines v. Matta</u>, 19 DPR 409 (1913). Al definir el concepto, hemos dicho que las servidumbres en equidad son "cláusulas restrictivas 'a beneficio de los presentes y futuros adquirentes' que imponen cargas o gravámenes especiales, como parte de un plan general de mejoras para el desarrollo de una urbanización

---

[12] M.E. García Cárdenas, *Derechos de urbanizaciones: servidumbres en equidad, controles de acceso e instalaciones vecinales*, San Juan, Ed. Interjuris, 2010, pág. 6.

[13] Íd.

[14] Íd.

[15] Íd.

residencial en esa finca".[16]  En cuanto a su propósito, en Sands v. Ext. Sagrado Corazón, Inc.,[17] expresamos que "las condiciones restrictivas en urbanizaciones residenciales tienen el propósito de preservar la belleza, la comodidad y la seguridad del reparto residencial según éste es concebido por sus arquitectos y constructores".

Estas condiciones restrictivas "se constituyen unilateralmente por el urbanizador como parte de las servidumbres en equidad y sirven para limitar las facultades de los futuros adquirentes con respecto al uso destinado y las edificaciones permisibles dentro de la finca gravada".[18]  Además, hemos establecido que para que una servidumbre en equidad sea válida y eficaz se requiere que las condiciones restrictivas que esta impone sean razonables, que se establezca como parte de un plan general de mejoras, que conste de forma específica en el título de la propiedad y que se inscriba en el Registro de la Propiedad.[19]

## IV

### *Régimen de Propiedad Horizontal*

El concepto de Régimen de Propiedad Horizontal es relativamente joven en Puerto Rico. Este tuvo su origen en

---

[16] Asoc. Pro Bienestar Vecinos v. Banco Santander, 157 DPR 521, 534-535 (2002), citando a Colón v. San Patricio Corporation, 81 DPR 242 (1959).

[17] 103 DPR 826, 828 (1975).

[18] SLG Pérez Rivera v. Registradora, supra, pág. 730.

[19] Residentes Parkville v. Díaz, 159 DPR 374 (2003).

nuestra jurisdicción con la aprobación en 1958 de la Ley Núm. 104 de 25 de junio de 1958.[20]  Esta fue enmendada mediante la Ley Núm. 157 de 4 de junio de 1976. Finalmente se convirtió en nuestra actual "Ley de Condominios", mediante la aprobación de la Ley Núm. 103 de 5 de abril de 2003, que enmendó casi la totalidad de los artículos de la pasada ley.

Hemos explicado que "[e]l Régimen de Propiedad Horizontal se adoptó en nuestra jurisdicción con una doble finalidad, a saber, proveer a las personas la posibilidad de disfrutar el derecho a la propiedad plena e individual de un inmueble y, a la vez, maximizar el uso del escaso terreno disponible en el país".[21]  De esta forma, "[l]a propiedad plena e individual de un apartamento coexiste (...) con la de otros dueños, mientras se comparten unas áreas comunes que pertenecen a todos como parte de la comunidad".[22]

Importante para la controversia que nos ocupa, es la realidad de que para que nazca un Régimen de Propiedad Horizontal, es necesario que el mismo sea establecido mediante escritura pública e inscrito en el Registro. Así, el Art. 2 de la Ley de Condominios, en su parte pertinente establece lo siguiente:

---

[20] 31 LPRA sec. 1291 *et seq.*

[21] Colón Ortiz v. Asoc. Cond. B.T. I, 185 DPR 946, 959 (2012).

[22] Íd. pág. 960.

> Las disposiciones de esta Ley son aplicables sólo al conjunto de apartamientos y elementos comunes cuyo titular único, o titulares todos, si hubiere más de uno, declaren expresamente su voluntad de someter el referido inmueble al régimen establecido en esta Ley, **haciéndolo constar por escritura pública e inscribiendo ésta en el Registro de la Propiedad.**[23] (Énfasis suplido).

En otras palabras, la inscripción en el Registro, conforme lo establece la Ley de Condominios, *supra*, es constitutiva del Régimen de Propiedad Horizontal. Además, el tercer párrafo del mismo artículo añade, en cuanto al contenido de la inscripción, que la escritura matriz que establezca el Régimen de Propiedad Horizontal expresará clara y precisamente el uso a que será destinada toda área comprendida en el inmueble, y una vez fijado dicho uso solo podrá ser variado mediante el consentimiento unánime de los titulares.

### V

Como adelantamos al principio, en su Recurso Gubernativo la parte Peticionaria esboza la teoría de que ambas figuras jurídicas, la servidumbre en equidad como condición restrictiva y el Régimen de Propiedad

---

[23] 31 LPRA sec. 1291.

Horizontal, pueden coexistir en el Registro de la Propiedad.[24]

En síntesis, la parte Peticionaria argumenta que la determinación de la Registradora de que la existencia de ciertas servidumbres impiden la inscripción en el Registro del Régimen de Propiedad Horizontal, no encuentra apoyo en la Ley Hipotecaria.[25] Señala que no ha podido encontrar disposición "que provea o tan siquiera sugiera que la existencia de una servidumbre en equidad tiene el efecto de imponer limitaciones legales al dominio, que impidan la inscripción o anotación de actos del titular afectado".[26] Además, argumenta que, con excepción de la presencia de una prohibición de enajenar, la caracterización de un derecho real no impide el que ambos derechos coexistan en el Registro, como tantos otros derechos, y añade, "[m]áxime si se considera que la figura jurídica de las servidumbres en equidad, es en nuestro ordenamiento, una de origen jurisprudencial".[27]

---

[24] En el Recurso Gubernativo la parte peticionaria también argumentó que "las condiciones [restrictivas] que nos ocupan carecen de la especialidad y claridad necesaria para ser oponibles y exigibles". Este Tribunal no atenderá el argumento de la parte peticionaria a los fines de atacar colateralmente las servidumbres en equidad sobre la finca. Nos limitaremos al asunto ante nuestra consideración de determinar si la Registradora actuó correctamente al denegar la inscripción del documento.

[25] Íd., pág. 10.

[26] Íd., pág. 11.

[27] Recurso Gubernativo, pág. 13.

Como bien señala la parte Peticionaria, fue mediante Glines v. Matta, supra, que este Tribunal incorporó del "common law" la figura jurídica de la servidumbre en equidad en nuestra jurisdicción. Desde entonces, sobre medio centenar de casos a través de más de un siglo de jurisprudencia, han establecido una figura jurídica que hoy se encuentra firmemente arraigada en nuestro acervo jurídico. [28] Como hemos señalado antes, "esta figura ha evolucionado en nuestro ordenamiento jurídico y tiene sustantividad propia". [29]

Así, mediante Lawton v. Rodríguez, [30] establecimos el requisito de que la servidumbre en equidad tiene que estar inscrita en el Registro, comenzando de esa manera, en aquel entonces, a aclimatar esta figura a las características civilistas de la fe pública registral. [31] En Asoc. de Vecinos de Villa Caparra v. Iglesia Católica, [32] establecimos que las servidumbres en equidad, una vez son inscritas en el Registro, se consideran derechos reales oponibles erga omnes. De esta forma, dejamos claramente establecido que la servidumbre en equidad sigue o persigue

---

[28] La Profesora Margarita E. García Cárdenas hace una copiosa recolección de parte de esta jurisprudencia. Véase García Cárdenas, Op. cit., páginas 11-208.

[29] Residentes Parkville v. Díaz, supra.

[30] 35 DPR 487 (1926).

[31] Asoc. Pro Bienestar Vecinos v. Banco Santander, supra, pág. 535.
[32] 117 DPR 346 (1986).

al inmueble sobre el cual se establece, sin importar quien o quienes advengan en sus futuros dueños.[33]

En fin, esta centenaria criatura jurisprudencial ha convivido con nuestro Registro de la Propiedad prácticamente desde sus inicios,[34] sin que la legislatura haya sentido la necesidad de incorporarla a nuestra Ley Hipotecaria. Nuestra Asamblea Legislativa no la ha incorporado, y tampoco la ha modificado para afectar su relación con el Registro. Es evidente entonces, que la inacción de la Legislatura por más de un siglo constituye un endoso, no solo a esta figura, **sino a su desarrollo jurisprudencial.**[35]

En el caso de autos, las condiciones restrictivas por las cuales la Registradora denegó la inscripción en el Registro, constituyen unas servidumbres en equidad que establecen claramente de su texto el tipo de vivienda que puede ser edificada en el predio inscrito. Como ya hemos advertido, el Régimen de Propiedad Horizontal que la peticionaria pretende inscribir es, en este caso, incompatible con las servidumbres en equidad previamente

---

[33] Es de notar, que en este aspecto la figura de servidumbres en equidad en nuestra jurisdicción no difiere mucho de aquellas jurisdicciones angloparlantes de donde proviene. Así, y como señala la Profesora García Cárdenas, "[e]n Inglaterra y en Estados Unidos se acepta que existen derechos que, si bien son constituidos por dos personas, tienen el efecto de correr con el inmueble, *'run with the land'"*. M.E. García Cárdenas, Op cit, pág. 15.

[34] Nuestro Registro de la Propiedad se estableció en el 1890, y las servidumbres en equidad objeto de la controversia en *Glines v. Matta*, supra, se habían inscrito en el Registro.

[35] Véase Opinión Disidente del Juez Stevens en Rodríguez de Quijas v. Shearson/Am. Exp., Inc., 490 U.S. 477, 486 (1989).

inscritas. Como también ya advertimos, el Art. 56 de la Ley Hipotecaria, supra, dispone que un Registrador no puede permitir la inscripción en el Registro de un documento mediante el cual se constituyan, transmitan, modifiquen o extingan derechos reales sobre un bien inmueble, si ya previamente se encuentra inscrito uno que se le opone o es incompatible con el que pretende inscribirse.

Es claro que en este caso la inscripción del Régimen de Propiedad Horizontal propuesta por la peticionaria extinguiría, o cuando menos modificaría una parte de la servidumbre en equidad previamente inscrita. Siendo así, y como bien determinó la Registradora, no procede la inscripción solicitada.

**VI**

Por los fundamentos antes expuestos, se confirma la recalificación recurrida.

Se dictará sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Park Tower, S.E.

    Peticionaria

       v.                      RG-2015-3      Recurso Gubernativo

Registradora de la Propiedad de San Juan, Sección Segunda, Hon. Carmen E. Ávila Vargas

    Recurrida

SENTENCIA

San Juan, Puerto Rico, a 2 de diciembre de 2015.

Por los fundamentos expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, se confirma la recalificación recurrida.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Presidenta señora Fiol Matta y la Juez Asociada señora Rodríguez Rodríguez concurren con el resultado sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo