ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| SERGEY DENISOV RECURRENTE V. JUNTA DE DIRECTORES Y/O CONSEJO DE TITULARES DEL CONDOMINIO THE TERRACE REPRESENTADO POR SU PRESIDENTE RECURRIDOS | TA2026RA00017 | *REVISIÓN DE DECISIÓN ADMINISTRATIVA* procedente del Departamento de Asuntos al Consumidor Caso Núm.: C-SAN-2024-0017897 Sobre: Ley de Condominio de Puerto Rico, Ley Núm. 129 de 16 de agosto de 2020, según enmendada |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora

Brignoni Mártir, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 febrero de 2026.

Comparece ante nos, Sergey Denisov (en adelante, "la parte recurrente"), a los fines de solicitar nuestra intervención para que dejemos sin efecto la *"Resolución Sumaria"* emitida y notificada el 28 de octubre de 2025, por el Departamento de Asuntos del Consumidor ("DACo"). Mediante esta, el referido Departamento declaró *No Ha Lugar* la querella instada por la parte recurrente. Todo, dentro de una causa de acción incoada a tenor de la Ley de Condominios de Puerto Rico, Ley Núm. 129-2020, según enmendada, 31 LPRA sec. 1921 et seq. Cuyas partes querelladas son la Junta de Directores y el Consejo de Titulares del Condominio The Terrace, (en lo sucesivo, en conjunto, "la parte recurrida").

Por los fundamentos que expondremos a continuación, *confirmamos* la determinación recurrida.

**I.**

El 8 de febrero de 2024, la parte recurrente presentó una querella ante el DACo en contra de la parte recurrida. A través de esta, cuestionó la

legitimidad de la Asamblea Extraordinaria celebrada en el Condominio The Terrace el día 9 de noviembre de 2023. En específico, impugnó la legalidad de las enmiendas realizadas al Reglamento del Condominio sobre los alquileres a corto plazo. Particularizó, que el Presidente de la Junta de Directores exhibió comportamientos inadecuados en el manejo de la referida Asamblea. Sobre esto indicó, que dicho Presidente incentivó la violación de los límites de tiempo establecidos para la reunión y condujo de forma injusta el desarrollo de los procesos. A su vez, aseveró que la Junta de Directores denegó arbitrariamente la solicitud de dirigir la Asamblea de manera "bilingüe". También impugnó la presencia aducidamente injustificada de un moderador externo; cuestionó la exactitud de las actas de la reunión; y sostuvo que fue violentado el derecho a la intimidad de los condóminos que promueven el alquiler a corto plazo.

En respuesta, el 13 de marzo de 2024, la parte recurrida presentó *"Contestación a Querella".* En esencia, negó las alegaciones principales vertidas en la reclamación de la parte recurrente. Arguyó, que la Asamblea Extraordinaria y las enmiendas reglamentarias aprobadas se llevaron a cabo de conformidad a la Ley de Condominios de Puerto Rico, *supra.* Además, adujo que el Consejo de Titulares tiene facultad legal para regular el término de los alquileres a corto plazo. En cuanto a las enmiendas al Reglamento sostuvo lo siguiente:

> En la asamblea celebrada el 9 de noviembre de 2023, la mayoría de los presentes aprobaron las enmiendas al Reglamento determinando, entre otros, un término de días para el alquiler a corto plazo. El 21 de noviembre de 2023, se circuló la minuta sin que transcurridos treinta días desde dicha fecha, se recibieran votos en oposición, obteniendo la aprobación de más de las dos terceras partes de todos los titulares, como dispone la Ley.

Así pues, concluyó que la parte recurrente tiene la obligación de cumplir con el Reglamento del Condominio, según enmendado.

Surge del expediente ante nos, que el 21 de enero de 2025, las partes delimitaron las controversias y cuestiones de derecho del caso a las siguientes consideraciones:

a. Si la enmienda al reglamento del condominio fue aprobada conforme a derecho.

b. Si la enmienda al reglamento no le es aplicable a los titulares previos a su aprobación.

c. Si el Consejo de Titulares tiene la facultad en ley para limitar el número de personas que pueda arrendar un apartamento a corto plazo.

Posteriormente, el 28 de octubre de 2025, DACo notificó la *"Resolución Sumaria"* que hoy nos ocupa. Mediante esta, declaró *No Ha Lugar* la querella instada por la parte recurrente.

Además, esbozó las siguientes determinaciones de hechos:

1. La parte querellante, Sergey Denisov, es titular del apartamento 9-D del Condominio The Terrace, en virtud de la escritura núm. 4 sobre Compraventa, otorgada el 24 de marzo de 2021, en San Juan, Puerto Rico, ante la Notario Frances R. Ramírez Sánchez.

2. El Condominio The Terrace se encuentra sometido al Régimen de Propiedad Horizontal.

3. La escritura matriz ni el reglamento interno del Condominio The Terrace no contenían prohibición ni limitación o periodo mínimo alguno para el alquiler de apartamentos.

4. En o alrededor del 25 de octubre de 2023, la Junta de Directores del Condominio The Terrace, por conducto de su presidente, convocó a los titulares del condominio a una asamblea extraordinaria, a celebrarse el 9 de noviembre de 2023, para atender la presentación y aprobación de la enmienda propuesta al reglamento del condominio a fin de incluir la regulación de los arrendamientos a corto plazo.

5. En la convocatoria de la asamblea extraordinaria se incluyó la siguiente propuesta de regulación sobre los alquileres a corto plazo en el condominio:

   a) **El periodo mínimo de estadía para un inquilino a corto plazo será de sesenta (60) días consecutivos. Ningún titular alquilará su propiedad en un término mayor de seis (6) veces al año.**
   b) **Copia de cada contrato de arrendamiento será registrado con el Administrador.**
   c) **La capacidad máxima permitida para un alquiler a corto plazo será de cuatro (4) personas adultas en total en la propiedad.**
   d) **Registro gubernamental: Los apartamentos involucrados en alquileres a corto plazo deben entregar a la oficina de Administración copia del certificado de registro de la Compañía de Turismo de Puerto Rico que certifica que pagan impuestos sobre el alquiler turístico ("room tax"), copia del permiso de uso del Municipio de San Juan, (la**

**licencia para operar alquileres a corto plazo que debe expedir el Municipio de San Juan, conforme establece el Capítulo VII de la Ordenanza Núm. 7, Serie 2002-2003, según enmendada, conocida como el "Código de Urbanismo del Municipio de San Juan") y copia del Certificado de Comerciante del Departamento de Hacienda.**

6. El 9 de noviembre de 2023, el Consejo de Titulares celebró una asamblea extraordinaria. En dicha reunión se aprobaron varias enmiendas al reglamento interno del condominio relacionadas a los alquileres a corto plazo.

7. La parte querellante participó de la asamblea extraordinaria y votó en contra de la regulación sobre los alquileres a corto plazo.

8. En la asamblea extraordinaria votaron 38 titulares a favor 13 titulares en contra, para un total de 51 votos.

9. El 21 de noviembre de 2023, el agente administrador del condominio envió un correo electrónico a los titulares para notificar el acta de la asamblea extraordinaria del 9 de noviembre de 2023 y apercibirle a los titulares sobre su derecho al voto a favor o en contra, conforme lo dispuesto en el Artículo 52 de la Ley de Condominios.

10. Inconforme con la determinación del Consejo de Titulares, el 6 de diciembre de 2023, la parte querellante presentó la querella de epígrafe toda vez que las enmiendas aprobadas era[n] ilegales por ser contrarias a la ley puertorriqueña. Alegó la parte querellante que la decisión ilegal del Consejo de Titulares le ocasionaría una pérdida monetaria de $150,000.00 aproximadamente en cuanto al valor de su apartamento e ingresos de alquileres futuros.

11. En o alrededor del 19 de diciembre de 2023, la parte querellada, por conducto del presidente de la Junta de Directores, notificó a los titulares los resultados finales de la votación de la asamblea extraordinaria del 9 de noviembre de 2023 y citamos:

**Por la presente, queremos informar los resultados finales de la votación. Los resultados fueron los siguientes:**

- **38 a favor, 13 en contra, para un 75% a favor. Procedimos a enviar por correo certificado a los inquilinos que no asistieron a la asamblea y recibimos 18 votos a favor y 2 en contra.**
- **Al sumar ambas votaciones, se produce un total final de 56 a favor y 15 en contra. Para un 79% a favor de la enmienda.**

Este documento fue suscrito por el presidente y secretario de la Junta de Directores y por el Lcdo. Luis A. Green Díaz, abogado y notario.

12. El 23 de diciembre de 2023, se presentó ante el Registro de la Propiedad Inmobiliaria de Puerto Rico, por la vía telemática la escritura núm. 28 sobre enmienda al Reglamento del Condominio The Terrace, otorgada el 21

de diciembre de 2023, en San Juan, Puerto Rico, ante el Notario Luis A. Green Díaz. Estas enmiendas quedaron debidamente inscritas.

13 Luego de varios trámites procesales, ambas partes presentaron sus respectivos escritos, con sus documentos complementarios para que este Departamento resolviera de manera sumaria la presente querella.

En desacuerdo, oportunamente el 17 de noviembre de 2025, la parte recurrente presentó *"Moción de Reconsideración."* Esta fue declarada *No Ha Lugar* por DACo, mediante la *"Resolución en Reconsideración"* emitida el 25 de noviembre de 2025 y vuelta a notificar el 11 de diciembre del mismo año.

Aun en desacuerdo, el 12 de enero de 2026, la parte recurrente presentó ante este Tribunal un recurso de revisión judicial. Mediante este, esbozó los siguientes señalamientos de error:

Erró DACo al declarar No Ha Lugar la querella de autos por entender que, la enmienda al Reglamento impugnado fue, debidamente convocada, debidamente notificada el Acta del resultado de la asamblea que genera la "aprobación" del Reglamento impugnado, certificado el voto de los titulares ausentes y aprobada por la cantidad de titulares requeridos por la Ley de Condominios de Puerto Rico vigente.

Erró DACo al declarar No Ha Lugar la querella de autos por entender que, a la enmienda al Reglamento impugnado, no le aplica la doctrina de tercería registral, contenida directamente en la Ley de Condominios de Puerto Rico vigente. Nótese que, los efectos de la enmienda al Reglamento, conforme la propia Ley de Condominios, solo serán efectivos contra terceros nuevos adquirientes sí dicho Reglamento, fue debidamente presentado u/o inscrito en el Registro de la Propiedad. En el caso de autos, el Sr. Denisov, adquirió su aparamento bajo las constancias registrales que afectaban su inmueble y que no contenía limitación alguna al arrendamiento a corto plazo, dedicaba su apartamento al arrendamiento a corto plazo y voto en contra de la enmienda al Reglamento.

En la misma fecha, la parte recurrente presentó *"Urgente Solicitud de Orden en Auxilio de Jurisdicción".* A los fines de que paralizáramos los efectos de la decisión recurrida.

También el mismo día, este Tribunal notificó una *"Resolución."* Mediante esta, le concedimos a la parte recurrida un término a vencer el 16 de enero de 2026 para presentar su oposición a la *"Urgente Solicitud de Orden en Auxilio de Jurisdicción".* De igual modo, le requerimos a dicha

parte que presentara su alegato en oposición en el término reglamentario de treinta (30) días.

Tras examinar la "*Oposición a Urgente Solicitud de Orden en Auxilio de Jurisdicción",* el 20 de enero de 2026, notificamos una *"Resolución"* en la que declaramos *Ha Lugar* la solicitud de auxilio de jurisdicción.

Posteriormente, el 10 de febrero de 2026, la parte recurrida presentó *"Alegato en Oposición de Revisión Administrativa".*

Con el beneficio de la comparecencia de las partes, procedemos a esbozar el marco legal aplicable al caso ante nuestra consideración.

**II.**

**A. Revisión Judicial de las Decisiones Administrativas**:

La revisión judicial de determinaciones administrativas está limitada por los parámetros establecidos en la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9671-977. De ordinario, esta tiene lugar luego de que se adjudican las controversias pendientes ante una agencia y concluyen todos los trámites administrativos. *Miranda Corrada v. DDEC et al.*, 211 DPR 738, 746 (2023).

Las determinaciones de las agencias administrativas son revisables ante el foro judicial para garantizar que estas actúan dentro de marco de las facultades que les fueron delegadas por ley. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 213 DPR 743, 753 (2024); *OEG v. Martínez Giraud*, 210 DPR 79, 88 (2022). De esta manera, los ciudadanos tienen un foro al cual recurrir para vindicar sus derechos y obtener un remedio en los casos en que las agencias actúen de forma arbitraria. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra, pág. 753. La revisión judicial de una decisión administrativa se circunscribe a examinar lo siguiente: 1) si el remedio concedido por la agencia fue el apropiado; 2) si las determinaciones de hecho realizadas por la agencia estuvieron sustentadas por la prueba sustancial que surgió del expediente administrativo; y 3) si, mediante una

revisión completa y absoluta, las conclusiones de derecho fueron correctas. *Otero Rivera v. USAA FED. SAVS. BANK,* 214 DPR 473, 484-485 (2024).

En el escenario particular de las cuestiones de derecho, el Tribunal Supremo ha proferido las siguientes expresiones:

> Hoy hacemos eco a las palabras del foro federal y concluimos que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. Así, enfatizamos la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU, supra. Como corolario, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. No guiados por la deferencia automática a la que alude el DACo, sino que por los mecanismos interpretativos propios del Poder Judicial. *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros*, 2025 TSPR 56.

Cabe resaltar, que en el ejercicio de revisión judicial los tribunales no pueden descartar de forma absoluta la determinación de una agencia administrativa. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra, pág. 754. Antes de variar la referida decisión se debe examinar la totalidad del expediente y "determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa, así fundamentado en la pericia particular de esta, en consideraciones de política pública o en la apreciación de la prueba". *Íd.* A su vez, las decisiones administrativas se deben evaluar bajo el marco de la deferencia, por razón de la experiencia y pericia de dichas agencias respecto a las facultades que se le han delegado. *Batista, Nobbe v. JTA. Directores*, 185 DPR 206, 215 (2012).

En consideración a la aludida deferencia, se ha establecido que "las decisiones de las agencias administrativas tienen una presunción de legalidad y corrección que los tribunales deben respetar mientras que la parte que las impugna no produce suficiente evidencia para derrotarlas." *Batista, Nobbe v. JTA. Directores*, supra, pág. 215. A la luz de ello, la parte que impugne una decisión administrativa tiene el peso de la prueba para demostrar que esta no se sustenta en el expediente administrativo o que las conclusiones a las cuales llegó la agencia son irrazonables. *OEG v. Martínez Giraud*, supra, pág. 89.

**B. Procedimiento Adjudicativo y Disposición sumaria de los asuntos que se dilucidan ante las agencias administrativas**:

El proceso adjudicativo es aquel por el cual "se adjudican derechos u obligaciones de una o más personas específicas". *Mun. de San Juan v. Jta. Planificación,* 189 DPR 895, 906 (2013). En el caso de las agencias administrativas los procedimientos adjudicativos se caracterizan por ser de naturaleza cuasi judicial. *J. P. v. Frente Unido I*, 165 DPR 445, 461 (2005). Estos tipos de procesos son regulados por un cuerpo de reglas mínimas establecidas en la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9641-9662; *SLG Saldaña-Saldaña v. Junta,* 201 DPR 615, 621 (2018).

La referida legislación permite a las agencias, al amparo de ciertos criterios, resolver una controversia sumariamente. *O.C.S v. Universal*, 187 DPR 164, 177-178 (2012). A tenor de ello, la sección 3.7(a) de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, 3 LPRA sec. 9647 establece lo siguiente:

> (a) Si la agencia determina que es necesario celebrar una vista adjudicativa, podrá citar a todas las partes o sus representantes autorizados e interventores, ya sea por su propia iniciativa o a petición de una de las partes, a una conferencia con antelación a la vista, con el propósito de lograr un acuerdo definitivo o simplificar las cuestiones o la prueba a considerarse en la vista. Se podrán aceptar estipulaciones, siempre que la agencia determine que ello sirve a los mejores intereses públicos.

> (b) Si la agencia determina a solicitud de alguna de las partes y luego de analizar los documentos que acompañan la solicitud de orden o resolución sumaria y los documentos incluidos con la moción en oposición, así como aquéllos que obren en el expediente de la agencia, que no es necesario celebrar una vista adjudicativa, podrá dictar órdenes o resoluciones sumarias, ya sean de carácter final, o parcial resolviendo cualquier controversia entre las partes, que sean separable de las controversias, excepto en aquellos casos donde la ley orgánica de la agencia disponga lo contrario.

> La agencia no podrá dictar órdenes o resoluciones sumarias en los casos en que (1) existen hechos materiales o esenciales controvertidos; (2) hay alegaciones afirmativas en la querella que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la petición una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derechos no procede.

De conformidad con lo anterior, El Reglamento de Procedimientos Adjudicativos de DACO, Reglamento Núm. 8034 del 14 de junio de 2011, establece en la Regla 11.1 lo siguiente:

> El Departamento ordenará el cumplimiento de lo que proceda conforme a Derecho sin la celebración de vista administrativa, cuando luego de las partes haber hecho sus planteamientos y de haber evaluado la evidencia, no surja una controversia real de hechos. En tal caso, si una de las partes solicita reconsideración, se citará a vista en reconsideración siempre que se establezca la existencia de una controversia real sobre hechos pertinentes.

La adjudicación sumaria persigue agilizar los procedimientos ante las agencias cuando no existen hechos esenciales controvertidos. *O.C.S v. Universal*, supra. Ello, dado que, "[n]ada impide que una agencia pueda adjudicar sin celebrar una vista evidenciaría cuando no exista controversia sobre los hechos y, además, toda la evidencia documental que surge del expediente señale claramente la corrección de la determinación de la agencia". *Íd.* "De este modo, se evita el tener que celebrar una audiencia evidenciaría que no aportaría ningún elemento meritorio al proceso analítico". *Íd,* citando a J. Echevarría Vargas, *Derecho Administrativo Puertorriqueño,* San Juan, Ed. Situm, 2012, pág. 231.

## C. Ley de Condominios de Puerto Rico ("Ley Núm. 129-2020"):

La legislación sobre Condominios fue adoptada para crear "un régimen jurídico que facilite la vida en convivencia y propicie la disponibilidad de viviendas en un área restringida de terreno." Exposición de Motivos de la Ley Núm. 129-2020. En esencia, en el referido régimen jurídico coexisten un dominio exclusivo sobre bienes inmuebles y un condominio forzoso de elementos comunes. *Bravman, González v. Consejo Titulares*, 183 DPR 827, 844 (2011). Uno de los principios rectores del sistema de condominios es garantizar a cada titular el pleno disfrute de su propiedad. *Consejo Titulares v. Ramos Vázquez*, 186 DPR 311, 324 (2012). Ello, en el marco de la sana convivencia y dentro de los límites de los derechos que les asisten a los demás titulares. 31 LPRA sec. 1921a. Por lo cual, al momento en que los titulares ejerzan y reclamen sus derechos, su actuar debe ser conforme a los principios de buena fe, de no

ir en contra de sus propios actos y de no recaer en el abuso del derecho. *Íd.*

En aras de facilitar la interpretación de este régimen jurídico en nuestro sistema legal existen unas fuentes de derecho las cuales propician la solución de las controversias que se puedan suscitar. Los edificios sometidos al régimen de propiedad horizontal tienen el siguiente orden jerárquico de fuentes de derecho: la Ley de Condominios; la escritura matriz y sus anejos; y el reglamento del condominio. *Con. Tit. Centro Int´l Torre II v. PRCI,* 210 DPR 403, 413 (2022). "La jerarquía es particularmente importante cuando se intenta resolver una controversia que puede tener distintas soluciones dependiendo de la norma legal que aplique". *Id.* Sobre el referido orden jerárquico se ha enfatizado que la Ley de Condominios tiene primacía, por lo que prevalece ante disposiciones contrarias a sus preceptos. *Id,* pág. 413-414.

Un inmueble constituido bajo la normativa de condominios se regirá por un reglamento. Mediante este, se establecen las normas administrativas que gobiernan el condominio. 31 LPRA sec. 1921b. Dicho reglamento se insertará a la escritura de su constitución, y se presentará en el Registro de la Propiedad al igual que cada una de las enmiendas que se le realicen. 31 LPRA sec. 1921l. De esta manera, el referido reglamento gozará de publicidad registral y con ello será oponible a terceros. Véase, *Park Tower, S.E. v, Registradora*, 194 DPR 244, 256 (2015); *Santiago v. E.L.A.*, 163 DPR 149, 161-162 (2004). Además, la Ley de Condominios establece que "[**t]odo titular u ocupante cumplirá estrictamente con las disposiciones de administración que se consignen en esta Ley, en la escritura y en el reglamento."** (Énfasis suplido). 31 LPRA sec. 1922k(b)(9). Este reglamento podrá ser modificado a tenor de las disposiciones del Artículo 14 de la Ley Núm. 129-2020. Sobre el particular, el referido Artículo lee como sigue:

> **En cualquier momento,** el titular único del inmueble o, **si hubiere más de uno (1), dos terceras (2/3) de todos los titulares, que a su vez, reúnan dos terceras (2/3) partes de las participaciones en las áreas comunes, podrán**

**modificar el reglamento,** pero siempre deberá quedar regulado cada extremo de los comprendidos en este Artículo. La modificación tendrá que constar en escritura pública y, además, se presentará para su inscripción en el registro particular de la finca matriz, dejándose archivada en el Registro de la Propiedad copia certificada, según dispone el Artículo 13 de esta Ley. (Énfasis suplido).

**La modificación vinculará a todos los titulares desde que se haya obtenido el voto afirmativo de las dos terceras (2/3) de todos los titulares, que a su vez, reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes o desde que haya transcurrido el plazo de treinta (30) días dispuesto en el Artículo 52 (c) de esta Ley sin que hubiera oposición de más de una tercera (1/3) parte de los titulares, que a su vez, reúnan una tercera (1/3) parte de las participaciones en las áreas comunes. Respecto a terceros, la modificación no surtirá efecto sino a partir de la fecha de presentación para archivo en el Registro de la Propiedad, de la escritura pública en que se haga constar la enmienda,** uniéndose copia certificada de la misma a la de la escritura de constitución del régimen y tomándose nota del hecho de la modificación del reglamento en el registro particular de la finca matriz. (Énfasis suplido). 31 LPRA sec. 1921m.

Cónsono con lo anterior, el artículo 52 de la referida legislación establece en lo pertinente lo siguiente:

[…]

b) La mayoría requerida reglamentariamente para la adopción de acuerdos se computará tomando como cien por ciento (100%) el número de titulares presentes o representados al momento de votarse por el acuerdo, excepto en aquellos casos en que se requiera unanimidad o del voto de dos terceras partes (2/3) de todos los titulares, que a su vez, reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes, en cuyo caso, se requerirá dar cumplimiento con las disposiciones del inciso (c), siguiente.

c) Cuando los titulares presentes en una asamblea convocada para tomar un acuerdo que requiera unanimidad o de dos terceras partes (2/3) de todos los titulares, que a su vez, reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes estos adoptasen dicho acuerdo, **aquellos que, debidamente citados no hubieren asistido serán notificados de modo fehaciente y detallado del acuerdo adoptado, y, si en un plazo de treinta (30) días a partir de dicha notificación no manifestaren en la misma forma su discrepancia quedarán vinculados por el acuerdo que no será ejecutable hasta que transcurra tal plazo, salvo que antes manifestaren su conformidad.** (Énfasis suplido).

La oposición a un acuerdo que requiera unanimidad o dos terceras partes (2/3) de todos los titulares que a su vez reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes deberá fundamentarse expresamente, bien en la asamblea o por escrito, según se dispone en el párrafo anterior, y en ningún caso podrá basarse en el capricho o en

la mera invocación del derecho de propiedad. La oposición infundada se tendrá por no puesta. La declaración de un voto caprichoso será tomada por el Consejo de Titulares en la asamblea en cuestión.

Cuando un titular que no asistió a la asamblea, presente ante la Junta de Directores, su oposición a una determinación del Consejo de Titulares que requiera unanimidad o dos terceras partes (2/3) de todos los titulares que a su vez reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes, la Junta de Directores determinará si la objeción fue fundamentada o no, y le notificará al titular su determinación. Si se determina que la oposición es infundada, se tendrá por no puesta. El titular podrá impugnar dicha determinación ante el Departamento de Asuntos del Consumidor, a partir de la fecha de notificación de la determinación de la Junta de Directores. 31 LPRA sec. 1922x.

[…]

De otra parte, en la escritura matriz y en el reglamento de un inmueble sometido al régimen de propiedad horizontal se pueden incluir disposiciones para regular los alquileres. Sobre ello, la legislación sobre condominios dispone lo siguiente: "[s]alvo que en la escritura matriz o en el reglamento, exista una prohibición expresa o que establezca un término mínimo de arrendamiento, no se podrá prohibir el arrendamiento de los apartamentos a corto plazo en los inmuebles sometidos al Régimen de Propiedad Horizontal". 31 LPRA sec. 1921*l*. A su vez, la precitada Ley establece que en el Reglamento del Condominio "se podrá regular la forma en que se llevarán a cabo los arrendamientos de los apartamentos a corto plazo". *Id.* Esto, "incluyendo requerir un término mínimo de noches a arrendar y [se] podrá imponer una cuota mensual especial, la cual no podrá ser mayor a la cuota de mantenimiento, a los titulares que arrienden su apartamento a corto plazo". *Id.*

Además, surge de la Exposición de Motivos de la precitada Ley, la intención legislativa de delegar al Consejo de Titulares la facultad de regular la manera en que los arrendamientos a corto plazo se realizarán. Así pues, "[l]os Consejos de Titulares tendrán la capacidad, en cualquier momento, de realizar enmiendas a su escritura matriz o al reglamento para establecer, modificar o eliminar la prohibición a los arrendamientos a corto

plazo que esta Ley le permite adoptar". Exposición de Motivos de la Ley Núm. 129-2020.

**III.**

En esencia, la parte recurrente impugna el proceso de enmienda del Reglamento del Condominio The Terrace. Cuestiona la forma en que se efectuó la convocatoria de la Asamblea Extraordinaria del 9 de noviembre de 2023; objeta el acta de la referida Asamblea; y el porcentaje de votación de los condóminos que permitió la enmienda del Reglamento. En específico, sostiene que la enmienda aprobada no cumple con los votos requeridos para que constituya una enmienda válida a tenor de la Ley Núm. 129-2020, *supra*. Sobre el particular aduce, que la Asamblea Extraordinaria únicamente contó con el voto de (51) titulares de (78) en total. Arguye, que ello no representa la cantidad de votos requeridos para aprobarse legítimamente una enmienda reglamentaria. A su vez, asevera que DACo incidió al concluir que (56) titulares que votaron a favor de la enmienda representan el (75%) de todos los titulares del Condominio.

De otra parte, alega que adquirió su apartamento de buena fe antes de la entrada en vigor del Reglamento Enmendado. Por lo cual, entiende que es un tercero registral que confió en las constancias del Registro de la Propiedad para comprar su inmueble y destinarlo al alquiler a corto plazo.

En lo que respecta a la parte recurrida, arguye que convocó válidamente una Asamblea Extraordinaria en la que la votación para aprobar la enmienda reglamentaria se contabilizó a través del conteo de las firmas de los titulares, plasmadas en un registro. Añadió, que la aludida enmienda fue aprobada por la mayoría de los condóminos que asistieron a la Asamblea para un total de (51) votos a favor y (13) en contra. Agregó, que notificó de la votación a los titulares ausentes y el cierre de votos culminó con más de dos terceras partes (2/3) de los titulares a favor de la enmienda propuesta.

Por otro lado, argumentó, que la parte recurrente quedó obligada al cumplimiento de las disposiciones reglamentarias aprobadas toda vez que,

al adquirir su apartamento, sabía o debía saber que la Ley Núm. 129-2020, *supra*, regula el Régimen de Propiedad Horizontal del cual voluntariamente decidió formar parte.

De entrada, nótese que las partes de epígrafe delimitaron las cuestiones fácticas y jurídicas a dilucidarse en este caso. Sobre el particular, expresaron que se encuentra en disputa lo siguiente: a) si la enmienda al Reglamento fue aprobada conforme a derecho; b) la aplicabilidad de la enmienda a los titulares que adquirieron apartamentos con antelación al Reglamento Enmendado; y c) la facultad legal del Consejo de Titulares para limitar el número de personas que puede arrendar un apartamento a corto plazo.

Al examinar detenidamente las cuestiones a resolver, concluimos que DACo no incidió al declarar *No Ha Lugar* la querella de epígrafe. Nos explicamos.

El Régimen de Propiedad Horizontal se caracteriza por propiciar la vivienda en colectivo de un grupo de condóminos que ostenta individualmente la titularidad de uno o mas apartamentos, y en conjunto son copropietarios de los elementos comunes que existen dentro del Edificio. En vista de lo anterior, las actuaciones de cada propietario están sujetas a los principios de la sana convivencia y limitadas ante los derechos que legítimamente le asisten al resto de los titulares. Este Régimen de Condominio se caracteriza por contener un Reglamento del cual surgen normas administrativas que gobiernan y regulan la existencia de este sistema colectivo. El referido Reglamento funciona como fuente de derecho al momento de dilucidar las controversias que puedan ocurrir dentro de este régimen.

Cabe destacar que las disposiciones reglamentarias de los condominios no son inmutables o de vigencia perpetua. Estas se pueden enmendar de conformidad a los preceptos de la Ley Núm. 129-2020, *supra.* De manera que el Consejo de Titulares tiene legitimación para enmendar su Reglamento.  En el caso presente, el Consejo de Titulares optó por

celebrar una Asamblea Extraordinaria para discutir y votar sobre una proposición de enmienda dirigida a regular los alquileres a corto plazo dentro del Condominio The Terrace. Según el Artículo 51 de la precitada Ley de Condominios, la citación para celebrar una asamblea extraordinaria deberá realizarse al amparo de lo establecido en el Reglamento del condominio que se trate. En su defecto, la citación deberá regirse por las disposiciones del referido Artículo 51.

Del expediente ante nuestra consideración no surge la existencia de unas disposiciones reglamentarias del Condominio The Terrace que hayan sido infringidas al convocar la Asamblea Extraordinaria en cuestión y tampoco la parte recurrente argumentó sobre su aplicabilidad. Lo que sí surge del expediente es una convocatoria de asamblea extraordinaria, fechada, con el nombre del condominio, el asunto de discusión y una "Agenda" que incluyó lo siguiente: "Presentación y aprobación de la enmienda propuesta al reglamento del Condominio The Terrace, a fin de incluir la regulación de los Arrendamientos a Corto Plazo (ACP)." Por consiguiente, la parte recurrente no fundamentó adecuadamente su cuestionamiento referente a la convocatoria de dicha asamblea de forma tal que evidencie alguna infracción legal.

En cuanto a la votación para la enmienda propuesta, no existe controversia sobre el número de condóminos que asistieron a la Asamblea Extraordinaria y sus respectivos votos. Tampoco está en controversia el resultado final de votos a favor y en contra. Mas bien lo que existe es una disputa sobre una cuestión de derecho relacionada a la suficiencia de votos para lograr una enmienda legítima del Reglamento.

En la Asamblea del 9 de noviembre de 2023 votaron en total (51) titulares: (38) a favor de la enmienda y (13) en contra. Posteriormente, según se desprende del expediente, los titulares que no asistieron fueron notificados del acta de la asamblea y se les permitió emitir su voto. Los detalles de la Asamblea fueron notificados por correo electrónico y por correo postal certificado, según surge del referido expediente. Tras la

ocurrencia de ello, la votación culminó en (56) votos a favor de la enmienda y (15) en contra de esta. La aludida modificación reglamentaria fue plasmada en escritura y presentada al Registro de la Propiedad. A su vez, el administrador del Condominio esbozó las siguientes expresiones: "Certifico que tra[n]scur[r]idos los 30 días no se recibí[ó] oposici[ó]n alguna a los acuerdos de la asamblea celebrada el 9 de noviembre de 2023."

Habiendo establecido la relación fáctica de la votación, corresponde en estos momentos examinar las disposiciones de la Ley Núm. 129-2020, *supra.* En específico, el Artículo 14 de la precitada Ley establece que el reglamento de un condominio podrá ser modificado con la anuencia de "dos terceras (2/3) de todos los titulares, que a su vez, reúnan dos terceras (2/3) partes de las participaciones en las áreas comunes." El referido Artículo dispone que la modificación reglamentaria vinculará a todos los titulares del Condominio desde el momento en que se obtiene la anuencia requerida. Sin embargo, los titulares que debidamente citados no comparecieron a la asamblea deberán ser notificados del acuerdo adoptado a tenor de los preceptos del Artículo 14 y 52(c) de la Ley Núm. 129-2020, *supra*. En este escenario, la modificación reglamentaria será vinculante luego de treinta (30) días contados a partir de la notificación a los titulares ausentes "sin que hubiera oposición de más de una tercera (1/3) parte de los titulares, que a su vez, reúnan una tercera (1/3) parte de las participaciones de las áreas comunes."

En el presente caso, tras la notificación a los condóminos ausentes, el resultado de la votación culminó en un total de (56) votos a favor de la enmienda y (15) en contra de esta. La cantidad total de los titulares que conforman el Condominio es de (78) condóminos. De conformidad a estos datos, el requisito de las dos terceras (2/3) partes se cumplía con el voto a favor de (52) personas. En la votación que hoy nos ocupa, (56) titulares votaron a favor de la enmienda propuesta lo que significa que el requisito de las dos terceras (2/3) partes fue superado. A su vez, los (15) titulares que votaron en contra de la modificación no cumplen con la oposición

requerida de una tercera (1/3) parte. Por consiguiente, la enmienda reglamentaria es válida.

En cuanto a la facultad del Consejo de Titulares para regular los alquileres a corto plazo, la Ley 129-2020, *supra,* expresamente establece que las disposiciones del reglamento de un Condominio pueden prohibir o conceder un término mínimo de arrendamiento para los alquileres a corto plazo. A su vez, la referida legislación permite que vía reglamentaria se regule la forma en que se llevarán a cabo los alquileres a corto plazo y le otorga capacidad al Consejo de Titulares para ejercer la aludida regulación. Así pues, en vista de estas disposiciones legales y de la validez de la votación de la enmienda en disputa, determinamos que el Consejo de titulares ejerció legítimamente su facultad legal.

Por otro lado, la parte recurrente entiende que la modificación reglamentaria no le es de aplicabilidad, puesto que él es un tercero registral que adquirió de buena fe su apartamento a tenor de las constancias del Registro de la Propiedad previas a la enmienda. Tampoco le asiste la razón en este argumento.

En nuestro Ordenamiento Jurídico las leyes gozan de publicidad. Es por ello, que la parte recurrente debía conocer o ejercer la diligencia de conocer las regulaciones atinentes al Régimen de Propiedad Horizontal al momento en que adquirió su inmueble y durante el ejercicio del dominio de este. Según establece la Ley Núm., 129-2020, *supra,* todo titular debe cumplir estrictamente con las disposiciones de administración de la legislación de Condominios, la escritura matriz y el Reglamento. En lo que respecta a las enmiendas reglamentarias, estas tienen efecto vinculante cuando son adoptadas válidamente, por lo cual la parte recurrente no puede eximirse de su cumplimiento. A la referida parte no se le coartó su derecho a votar por la enmienda propuesta. Su posición no resultó ser favorecida dado que los votos en contra de dicha enmienda no fueron los suficientes para derrotar su aprobación. La doctrina de tercero registral, como bien establece su nombre, aplica solo a los terceros o personas

ajenas al Condominio que confíen en las constancias del Registro de la Propiedad. La parte recurrente no es un tercero sino parte de los condóminos que voluntariamente asumieron los derechos y deberes de adquirir un bien inmueble bajo el sistema de condominios.

De otra parte, es sabido que ante los recursos de revisión judicial nuestra labor se circunscribe a examinar: la corrección del remedio concedido; si la decisión de la agencia administrativa se basó en el expediente; y si las conclusiones de derecho fueron correctas. Al realizar el examen anterior, determinamos que la presunción de corrección y legalidad que le asiste al proceso de adjudicación administrativa no fue rebatida. La razón de ello estriba, en que la parte recurrente no presentó prueba suficiente demostrativa de que la adjudicación de dicha agencia carece de razonabilidad o que no se basa en el expediente administrativo. Además, al revisar las conclusiones de derecho no se desprende que estas sean producto de una interpretación jurídica errónea. Por lo tanto, confirmamos la determinación recurrida.

### IV.

Por los fundamentos expuestos, *confirmamos* la *"Resolución Sumaria"* objeto de revisión.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones